KIRBY ET AL., RESPONDENTS, *v.* HOEH ET AL., APPELLANTS.

(No. 7,029.)

(Submitted March 15, 1933.   Decided April 29, 1933.)

[21 Pac. (2d) 732.]

*Mr. Louis P. Donovan* and *Mr. Henry McClernan,* for Appellants, submitted a brief; *Mr. Donovan* argued the cause orally.

*Mr. Walter R. Knaack* and *Mr. Ralph J. Anderson,* for Respondents, submitted a brief; *Mr. Aaron R. Shull,* of Counsel, argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an equity action to set aside a judgment by default entered in the district court of Toole county on July 24, 1931.

It is necessary to have in mind a series of cases which constituted the litigation out of which this action proceeds. On June 15, 1929, one C. H. Withers, then a copartner of respondent Kirby, instituted an action in claim and delivery to recover from one Arthur Hoeh, appellant herein, certain personal property consisting of a drilling machine, boiler and equipment. In connection with the action an undertaking was furnished by plaintiff therein, upon which respondents G. W. Kirby and Agnes K. Larson were sureties. Hoeh, the defendant in that action, claimed a return of the property in his answer and recovered judgment for the return thereof, or, in the event that delivery could not be had, for its value in the sum of $1,400, with interest and costs in the sum of $83.10. This judgment was rendered on March 28, 1930. An execution was issued and returned *nulla bona.* The record discloses that the property was not delivered to Hoeh, although there was some negotiation with relation thereto. One Carroll claimed some interest or title in the property, although a stranger to

the claim and delivery action. He finally executed a bill of sale for his interest. The bill of sale ran to Arthur Hoeh.

No delivery of the property having taken place in accordance with the decree of the court, on June 17, 1931, Hoeh instituted an action against G. W. Kirby and Agnes K. Larson, who, as stated, were the sureties on the claim and delivery undertaking. He alleged, in substance, that the provisions of the undertaking and the judgment entered had not been performed, and demanded judgment for the value of the property fixed by the jury in the former action. Summons was issued and served on Agnes K. Larson, in Toole county, on June 17, 1931, and on Kirby, in Fergus county, on June 22, 1931.

Thus it will be observed that two suits were instituted prior to June 21, 1931, one the original action in claim and delivery and the other the action upon the undertaking by Hoeh against Kirby and Larson.

The action in which this appeal was taken was the third of the series, and is a case in equity by Kirby and Larson to set aside the default judgment entered against them in the second action. For convenience the actions may be referred to by number, the original claim and delivery action being No. 3966; the action on the undertaking No. 4473; and the final action, in which the appeal is pending, No. 4548.

The issue on this appeal grew out of the proceedings in the previous action, No. 4473. That action was pending on June 21, 1931. It was instituted for the purpose of collecting the $1,400, the value of the machinery, and $83.10 costs, awarded by the judgment in action 3966. The complaint in action 4473 alleged the failure to deliver the machinery and the failure to pay the costs in the previous action. Henry McClernan, of Shelby, was one of the attorneys for Hoeh in all of the suits.

The real issue to be decided on this appeal grew out of a conversation between respondent Kirby and Attorney McClernan, at Shelby, on Sunday the 21st of June, 1931. Service in the action had been made on defendant Agnes K. Larson on June 17 previous. No service had been made on Kirby at

the time of the conversation. About 11 o'clock in the forenoon of the day in question, Attorney McClernan was observed by respondent Larson to be passing the Pioneer Hotel in Shelby. Kirby was then in the hotel. Mrs. Larson called Kirby's attention to the presence of McClernan, whereupon Kirby stopped McClernan and engaged him in conversation relative to the action then pending on the claim and delivery bond, cause No. 4473. In view of the fact that the contentions of both parties are involved in this conversation, it is important to consider the essential statements made by the parties.

Kirby testified that he began the conversation by referring to the drilling machinery and the pending action to recover on the bond. He said: "I asked Mr. McClernan about the return of the machine and asked him about those papers. I told him that I didn't know where Hoeh wanted the machine moved and I hadn't been told where to move it and asked him if it was moved back if it would release the bonds, and he said it would. I mentioned the taxes that had been paid on the machine by Mr. Carroll, and Mr. McClernan and Mr. Hoeh had been out some expense, but he thought the tax would offset the cost Hoeh had been out. I told him I was going away to Wisconsin. I told him if I moved the machine back where it was taken from I had been asked to notify him that they wanted to attach it, and Mr. McClernan told me he would see Hoeh in a few days and find out where he wanted it moved. I told him Mr. Carroll would take care of it. He would be up here when I was away and he would take care of it when he found out where Hoeh wanted it moved." Kirby was asked if anything was said about the case against himself and Mrs. Larson on the bond, and he answered: "Nothing, only if we returned it the bond would be released, and that no further action would be taken."

Kirby was asked: "And what, if anything, was the reason that you filed no answer in this case 4473, being the action brought on the bond against yourself and Mrs. Larson?" He answered: "Because I thought when I was notified before to return it I would return, or thought I would be notified where

to return it and I had made arrangements to return it when notified." He further testified that he did not receive any notice from McClernan or anyone connected with the case as to where the rig was to be delivered. He did not claim that there was any special agreement relative to an extension of time for filing an appearance or an answer, but testified that he was ready, able, and willing to deliver the machine when notified by McClernan or his client of a place of delivery, and that he understood from the conversation that there was an agreement whereby he should deliver the machine to a place to be designated by McClernan. He summarized his understanding, in response to questions by McClernan on cross-examination, as follows: "For me to move it back, the bond would be released; you wanted to get through with it and that the tax Mr. Carroll had been out would practically offset the money Hoeh had been out and to pay no more attention to it; you wanted to get through with it, get it cleaned up." Kirby testified that as a result of this conversation and his understanding of it, communicated to Mrs. Larson, they both relied on such agreement, and that they did not file any appearance in the pending action within the time allowed by law, or at all, until after the default had been entered.

The respondent Mrs. Larson, defendant in action No. 4473, detailed the occurrence of June 21, 1931. She told of directing Kirby's attention to McClernan's presence; testified that she heard part only of the conversation; that she heard Kirby tell McClernan that he "wanted to speak to him about the summons I had received and he had not"; and that she heard McClernan say that he "wanted to get the matter cleaned up, that it had been in the file a long time, or something like that." She also said that when Kirby returned to the house he related the conversation to her, and that, as a result of the conversation and the reliance placed upon it, she did not make any appearance in the action, and that she certainly would have made an appearance if the conversation had not occurred. She also said she was willing to pay to Mr. Hoeh the $83.10 and interest thereon, the costs of the former action.

Henry McClernan testified and related his version of the conversation of June 21, 1931. There is very little difference in the two versions, except that McClernan testified that Kirby said that he wanted to return the drilling machinery and boiler which were involved in the action, and inquired where Hoeh wanted them delivered. He said: "I told him I did not know, but I would arrange to see or communicate with .Mr. Hoeh and find out. Then he told me that he was getting ready to leave the state, but Mr. Carroll would come to Shelby within a short time, and he said substantially it would probably be the following Wednesday and that Mr. Carroll would talk to me, and I suggested to him Mr. Carroll come to my office and we would discuss a settlement. He said something about taxes which had been paid on the machine, but so far as I recall I did not say anything about the disposition of those taxes. I made some remark or remarks to the effect we could probably settle the case. He said substantially Mr. Carroll would return the property to the place thereafter designated. I never saw Mr. Carroll after that date until the 10th of October this year. I was in Shelby all the time. I may have been absent for a day or part of a day, but I didn't leave for any extensive time. I have a law office in Shelby." He further testified that he never agreed to dismiss the action or to have it dismissed; that he never gave any extension of time for appearance; and that he told Kirby, when Mr. Carroll called, a settlement could probably be arranged, but nothing further. He was asked: "Were there any definite terms arrived at on that day whatever?" He answered: "No, I made it clear to Kirby that it would be necessary to pay some money in order to effect a settlement." The witness further testified that he was not attempting to mislead Kirby and Mrs. Larson into a default, and that he had no intention of deceiving them to their disadvantage.

While the record does not disclose the fact exactly, it is apparent that Kirby returned to Lewistown either that day or the next, because service was made on him by the sheriff of Fergus county on June 22. The record does not disclose

that McClernan made any attempt to communicate with either Kirby or Carroll relative to a place of delivery of the machinery, or that Kirby or Carroll made any effort to obtain from McClernan or his client any information or directions as to the place of delivery of the machinery.

On July 8, 1931, the default of Agnes K. Larson was entered, and on July 14, 1931, the default of Kirby was entered. On July 24, judgment by default was entered in favor of Hoeh, and against Larson and Kirby, for $1,639.24, together with $10 costs. Thereafter Kirby and Larson moved to set aside the defaults and the judgment. After hearing, the motion was denied. Execution issued on the judgment, and the sheriff of Toole county proceeded to notice for sale certain real estate belonging to Agnes K. Larson. In order to halt the sale of the property and to vacate the judgment, this action, designated No. 4548, was instituted, and, after issue was joined, it proceeded to trial. The court made eighteen findings of fact and certain conclusions of law based on the findings of fact. Judgment was entered in favor of Kirby and Larson. This judgment set aside the previous judgment in cause 4473; directed the payment of $83.10, costs of the previous action; and authorized the filing of an answer by Kirby and Larson within ten days in cause No. 4473. Costs were also allowed to Kirby and Larson in the sum of $61. Hoeh appealed to this court from the judgment thus entered, and, as grounds of appeal, asserts four specifications of error, as follows:

"1. The court erred in making its finding of fact numbered 5, to the effect that the plaintiff Kirby agreed with the attorney for the defendant Hoeh that if Kirby would return to Hoeh the personal property involved in this action to a place thereafter to be designated by the said attorney, there would be nothing further to the action numbered 4473, and upon the return of said property, costs payable under the judgment in case numbered 3966 would be adjusted between the parties, and to the effect that Kirby was informed by the said attorney that it would not be necessary to further appear in said action 4473.

"2. The court erred in making its finding of fact numbered 13, to the effect that plaintiffs herein had a prima facie, full and complete defense to the complaint in said cause numbered 4473.

"3. The court erred in drawing its conclusion of law to the effect that the conduct of the said attorney for defendant Hoeh as found in the court's findings of fact amounted to constructive fraud, and that the judgment in cause numbered 4473 was procured by extrinsic constructive fraud.

"4. The court erred in rendering its judgment in favor of plaintiffs and against defendants."

In reality the four specifications involve but two propositions. The first proposition involves specifications 1 and 3, relative to the conversation of June 21, 1931, between Kirby and McClernan, and the finding that the conversation resulted in an agreement, afterwards disregarded, in such a manner as to amount to constructive extrinsic fraud.

The immediate precedent for the procedure in this case is to be found in the case of *Bullard* v. *Zimmerman*, 82 Mont. 434, 268 Pac. 512; Id., 88 Mont. 271, 292 Pac. 730. The *Bullard Case* involved a default taken against Bullard after an alleged oral agreement between counsel. Bullard endeavored to have the default set aside by motion in the pending action, but failed. He then brought an action in equity. A demurrer to his complaint was sustained, and an appeal was taken, wherein this court considered almost every possible phase of such an action, and approved the procedure. The opinion found in 82 Mont. 434, 268 Pac. 512, is a most exhaustive and comprehensive discussion of the subject. The action was sent back to the district court, with instruction to overrule the demurrer; whereupon an answer was filed, issue joined, and the trial occurred. Judgment was entered setting aside the Bullard default. From this judgment appeal was taken by Zimmerman, plaintiff in the original action. Again this court reviewed the procedure and approved it, finally affirming the last judgment of the lower court.

In view of these elaborate discussions it is not necessary to enter into a consideration of the procedure. We may at once proceed to the facts of this case and ascertain if they bring the instant action within the rules laid down in the *Bullard Cases*.

The findings are ample to sustain the judgment, but the serious question is: Are the findings themselves sustained by the evidence? As we have seen, there is little difference in the details of the conversation as related by the different participants. The main difference comes in the statements found in the testimony of Kirby on cross-examination by McClernan. There Kirby said that McClernan told him to move the rig back and the bond would be released, and to pay no more attention to the suit.

This tendered the issue as to the existence of a real stipulation or agreement. It brings us directly to the rule heretofore laid down by this court, that the decision of a trial court will not be reversed unless it is shown that the evidence strongly preponderates against the court's findings, and, where there is a strong conflict in the evidence, the findings will be sustained. (*Baker* v. *Citizens' State Bank*, 81 Mont. 543, 264 Pac. 675.)

In this case McClernan denied that he ever made the last above statement. He said that he told Kirby to have Mr. Carroll come "to see me to find out where the rig was to be delivered and that when Carroll called he could probably arrange a settlement, but nothing further." McClernan denied that he ever entered into an agreement with Kirby for an extension of time to plead, or that he ever said that they need pay no further attention to the action. In view of the conflict on this point, the case is brought squarely within the principle announced in *Bitter Root Creamery Co.* v. *Muntzer*, 90 Mont. 77, 300 Pac. 251, in which the court followed with approval what was said in *Cox* v. *Hall*, 54 Mont. 154, 168 Pac. 519, 521, viz.: "To us, out of the presence and hearing of the witnesses, it appears that the court below might well have

reached a different result; but it would be a gross perversion to say that the findings and decree are without substantial evidence to support them." The court below did have some evidence upon which to base its findings; and, having made the findings, under the rule heretofore announced we do not believe that they can be disregarded and set aside by this court.

In this case the controversy involves only the right of litigants to assert a defense to a pending action. Such matters are usually determined on motion within the case. While this is a separate action, it but reaches a matter of practice. The procedure is designed to give to the presiding judge a broader power and a more liberal discretion in such matters than otherwise obtains. Actual fraud was not charged, nor found by the court. Constructive fraud only is involved. Such so-called fraud, while sufficient to move the court's discretion in the matter of setting aside the defaults, does not impute the element of moral turpitude contemplated in actual fraud.

It is not necessary to hold that the acts in question were done with intent or design to deceive; but the test is: Did they mislead and thereby induce a party to omit the assertion of a right? In this case the record does not, in our opinion, indicate any wrongful or fraudulent design on the part of the attorney. But the finding of the court to the effect that the defendants did rely upon the conversation as a reason for not pleading within time has support in the evidence, even though no such purpose was intended by the attorney. In *Bullard* v. *Zimmerman,* 88 Mont. 271, at page 279, 292 Pac. 730, 733, the court said: "The failure to prove actual fraud is unimportant." So here we are impelled to leave the findings of the trial court undisturbed, even though no actual fraud was proved.

The second specification of error goes to the possible defense to the action on the bond. It is asserted that no attempt had been made in good faith to deliver the drilling rig within a reasonable time after entry of judgment directing its return. All that is required in this particular is that the

complainants show that they had a prima facie, meritorious defense. (*Bullard* v. *Zimmerman*, 88 Mont. 271, 202 Pac. 730.) The record does disclose that some attempt was made toward a delivery of the property. The court made a finding that Kirby and Larson had a prima facie, full, and complete defense to the cause of action set out in the complaint in cause No. 4473, on the merits. What we have said relative to the other findings is likewise true of this one. The record does show some evidence to sustain the finding; and, such evidence having been believed by the court, the findings based thereon should stand.

The judgment is affirmed.

ASSOCIATE JUSTICES ANGSTMAN and MATTHEWS concur.

MR. JUSTICE ANDERSON, deeming himself disqualified, did not hear the argument and takes no part in the foregoing decision.

MR. CHIEF JUSTICE CALLAWAY, Dissenting:

It seems to me that, after drawing all permissible inferences from the plaintiffs' evidence, there is not enough to sustain the judgment. At the most it seems that McClernan told Kirby, if the machinery were returned, the case would be dismissed. The promise to forbear was conditioned expressly upon the return of the machinery. Special comment upon the uncertain, indefinite, nature of the promise, if it was such, need not be made. The place to which the machinery was to be returned was not agreed upon. Kirby did not know where Hoeh wanted it delivered, nor did McClernan, who said he would ask Hoeh about it; but he did not say that he would convey the information to Kirby or to Kirby's agent Carroll. Kirby did not seek any further information from McClernan on the subject; he did not even ask McClernan to communicate with him again. The service of summons on the very next day after the conversation did not make any impression upon him.

It does not appear that he left this state during the period in question here.

Ordinary prudence and diligence required Kirby to ascertain the place of delivery if he intended to return the machinery, and do so with reasonable celerity. The obligation was upon Kirby, if he in fact intended in good faith to return the property, to go to McClernan for further information; it was not incumbent upon McClernan to hunt up Kirby to impart the information. The record does not indicate that McClernan intended any deceit, and, if plaintiffs were deceived, it was because of their failure to do what an ordinarily prudent person would have done.

But what is of greater concern is the tendency to extend the application of the doctrine of *Bullard* v. *Zimmerman*. That case was decided correctly, but it reaches the limit. The equities in favor of plaintiffs here are much weaker than they were in plaintiff's favor in that case. The precedent now to be established will prove unfortunate.