FRISBEE, Appellant, *v.* COBURN, Administrator, et al., Respondents.

(No. 7,434.)

(Submitted December 2, 1935. Decided December 10, 1935.)

[52 Pac. (2d) 882.]

60

*Mr. George E. Hurd,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Gerald S. Frary* and *Messrs. Hall & McCabe,* for Respondents, submitted a brief; *Mr. H. C. Hall* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action to secure relief from an alleged void judgment of foreclosure of a real estate mortgage, and to quiet his title as against the purchaser at sheriff's sale and the lien of the mortgage theretofore sought to be foreclosed in the proceeding. The cause was tried before the court sitting without a jury. A judgment was entered finding the issues generally in favor of the defendants and quieting their title to the lands and premises in question. The appeal is from the judgment.

Defendants have filed in this court a motion to strike the bill ██ ██ of exceptions from the transcript on appeal, on the ground that the trial judge was without jurisdiction to settle the bill. It appears from the record that plaintiff served his proposed bill of exceptions on November 14, 1934, which was admittedly within time. The proposed bill was filed with the clerk of the court of Glacier county on November 15, 1934. On November 19 thereafter defendants served upon counsel for plaintiff, and filed with the clerk of court, their proposed amendments. On November 23 counsel for the plaintiff served on counsel for the defendants a notice that on December 12, 1934, the plaintiff would "call up for settlement his proposed bill of exceptions and defendants' proposed amendments thereto and pray that the same be settled, signed and allowed as and for the bill of exceptions in the above-entitled cause." On December 12 counsel for the defendants objected to the settlement of the bill "on the ground and for the reason that said proposed bill of exceptions was not presented to the court for settlement within the time allowed by statute." The trial judge then allowed certain amendments at this hearing and took the matter of the settlement of the bill under advisement. Later, on December 18, 1934, the objection of defendants was overruled and the bill was settled and allowed.

As we understand the position of counsel for the defendants, it is conceded that the proposed bill and the amendments thereto

were served within time, but it is urged that it was incumbent on counsel for plaintiff, since he gave notice of a time and place of settlement of the bill, to fix the date for settlement in such notice at some time within the ten-day period immediately following the service of the amendments and on five days' notice.

The pertinent portion of section 9390, Revised Codes 1921, relative to the settlement of bills of exceptions, is as follows: ''Within ten days after such service, the adverse party may propose amendments thereto, and serve the same, or a copy thereof, upon the other party. The proposed bill and amendments must, within ten days thereafter, be presented by the party seeking the settlement of the bill to the judge who tried or heard the case, upon five days' notice to the adverse party, or be delivered to the clerk of the court or judge.''

This court has repeatedly said in construing this section that where, as here, amendments are proposed to the proposed bill which are not accepted, three methods are available to secure the settlement of the proposed bill of exceptions, namely: (1) Within ten days after the service of the amendments, present the proposed bill and amendments to the judge on five days' notice to the adverse party, or (2) deliver them to the clerk, or (3) deliver them to the judge. (*Girard* v. *McClernan,* 39 Mont. 523, 105 Pac. 224, 225; *Freeman* v. *Weare,* 42 Mont. 472, 113 Pac. 466; *Best Mfg. Co.* v. *Hutton,* 49 Mont. 78, 141 Pac. 653; *State ex rel. Thelen* v. *District Court,* 51 Mont. 337, 152 Pac. 475.)

It appears from the record that the proposed bill of exceptions was filed with the clerk, and likewise the proposed amendments were filed with that officer by counsel for the defendants. However, notwithstanding the fact that the amendments were not filed by plaintiff but by the defendants, a substantial compliance with the statute was accomplished. (*Best Mfg. Co.* v. *Hutton,* supra.)

Admittedly, if counsel for the plaintiff was proceeding under plan 1 above outlined, the date noticed for hearing was without the time provided by section 9390. Counsel for the defendants argue that counsel for the plaintiff first attempted to pro-

ceed under plan 2, but later attempted to continue under plan 1. A situation not unlike this arose in the case of *Girard* v. *McClernan,* supra. There the proposed bill was served within time; likewise amendments to the proposed bill were presented to and served on opposing counsel within time. The amendments were served on July 17, and they, not being accepted, were on July 24, together with the proposed bill, delivered to the judge. The proposed bill ''was noticed for settlement for July 30th at which time objection was interposed to the settlement, and the hearing was continued until August 7th following. On July 31st counsel seeking to settle the bill gave written notice of the hearing for August 7th.'' It will be noted that there, as here, the notice seeking settlement of the bill fixed a date beyond the expiration of the ten-day period following the service of the amendments. In that case the court, speaking with reference to these notices, said: ''In the view we take, it is wholly immaterial that notices for the several hearings upon the settlement of the proposed bill were given by counsel for Girard.'' The court, after discussing the question in detail and enumerating the three methods provided by statute, said of counsel's conduct in that case: ''He chose the third alternative, but was fully within the law.'' Here counsel chose the second alternative, and before any of the notices were served, he had fully complied with the law.

It is argued, however, that in the *Girard Case* the bill and the amendments were delivered to the judge, and here the bill and the amendments were delivered to the clerk. The procedure is identical under plans 2 and 3, except that under plan 2 the bill and amendments are delivered to the clerk of the court, whereas under plan 3 they are delivered to the judge. There is no distinction between the facts in this case and those in the *Girard Case.*

The trial court properly overruled the objection to the settlement of the bill and proceeded to settle it, and accordingly defendants' motion to strike the bill is denied.

Plaintiff by his complaint alleged the appointment and qualification of the defendant Coburn as administrator of the estate

of Stella S. Carroll Scroggins, deceased, the corporate capacity of the defendant Barnes Bros., Inc., and the capacity of the defendant Glacier county. He then alleged that he was the owner and entitled to the possession of certain described lands in Glacier county, except a reservation of 2 per cent. of the oil and gas; that on June 30, 1919, and until November 7, 1932, one George D. Lockie was the owner and in possession of these lands; that on June 30, 1919, Lockie and wife executed and delivered to Barnes Bros. a note for $1,800, maturing on July 1, 1924, secured by a real estate mortgage describing the lands in question; and that the note and mortgage were transferred by assignment in writing to Stella S. Carroll Scroggins, recorded in September of the year 1919. It is alleged that on July 1, 1924, an action was begun in the district court of Glacier county wherein Stella S. Carroll Scroggins was designated plaintiff, and Lockie and wife, Barnes Bros., and Glacier county were named as defendants; that summons under the seal of the court was issued and "duly served upon all of the above-named defendants, and thereafter such proceedings were had and taken in said action as resulted in the duly making and giving of a decree on the 18th day of February, 1925," wherein it was adjudged that the plaintiff therein have and recover from the defendants Lockie the amount of the principal, interest, attorneys' fees and costs, and directing the foreclosure of the mortgage and the sale of the property at decretal sale and the payment of the proceeds realized therefrom to Stella S. Carroll Scroggins; that the sheriff of Glacier county pursuant to the decree on April 4, 1925, sold the property, "at which sale some person unknown to plaintiff bid in the property in the name of S. S. Carroll Scroggins for the full amount of the judgment"; that the sheriff made his return on the sale and executed and delivered to the purchaser a deed purporting to convey the lands in question unto such purchaser on June 26, 1926; that on November 7, 1932, Lockie and wife executed a deed conveying the lands and premises in question unto the plaintiff, reserving 2 per cent. of the oil and gas produced from the lands, which deed was recorded.

Plaintiff then alleged that S. S. Carroll Scroggins died at Pinole, California, on or about July 8, 1924, and that "some person unknown to the plaintiff caused said action hereinbefore referred to * * * to be instituted in said court and to be maintained therein, and caused said property to be sold to S. S. Carroll Scroggins and the sheriff's deed above mentioned to be executed and delivered to her." It was further alleged, on information and belief, that the fact of the death of S. S. Carroll Scroggins before the action was commenced and while it was pending was not at any time made known to the court in which the action was then pending; nor was this fact made known to the court or the judge thereof at the time the decree of foreclosure was made and entered, "and thereby some person responsible for the institution and maintenance of said action, the sale of said property, and the pretended making of said deed to S. S. Carroll Scroggins perpetrated upon said court a fraud, in that said S. S. Carroll Scroggins was not the real party in interest in said action, could not institute or maintain said action, and could not authorize any person to institute said action in her name and to maintain the same, and said court was led to believe and did believe that said S. S. Carroll Scroggins was alive and was capable of instituting said action which in fact was untrue."

The complaint contained an allegation as to rents and profits which, however was on the trial withdrawn from consideration and therefore is unimportant here. It is then alleged that S. S. Carroll Scroggins and Stella S. Carroll Scroggins are one and the same person, and that the defendants claim some right, title, or interest in and to the lands, which claim is inferior to that of the plaintiff. Plaintiff prayed that the judgment and decree of foreclosure be declared null and void *ab initio;* that the sheriff's deed be set aside and likewise declared null and void; that it be adjudged that the defendants and each of them have no estate or claim in the property; and that they be enjoined from asserting any claim, and for general relief and costs.

The defendants demurred generally to the complaint; the demurrer having been overruled, they answered admitting all of

the allegations of the complaint except those setting up ownership and right of possession of the real estate in the plaintiff, the conveyance of the lands by Lockie and wife to plaintiff, the alleged fraud committed on the court in the maintenance of the foreclosure proceeding and the procuring of the decree of foreclosure and sale of the premises, and the allegation that the right and claim of plaintiff was superior to that of the defendants. Affirmatively, the answer contains pleas of various statutes of limitation. These affirmative pleas are denied by reply.

On the trial defendants at the outset challenged the sufficiency of the complaint for substance, which objection the court took under advisement. The proof consisted chiefly of the files in the foreclosure action, namely, the complaint, summons, order of sale, return on sheriff's sale, and the papers in the Stella S. Carroll Scroggins probate proceedings on file with the clerk of the court of Glacier county, to-wit, petition for letters of administration, the exemplified copy of the probate proceedings of the deceased Scroggins in the superior court of Contra Costa county, California, the petition of the defendant Coburn for appointment as administrator and his oath, and the deed from Lockie and wife to plaintiff. All of these documents were offered in evidence, objected to by counsel for the defendants, the objections being taken under advisement. No ruling has ever been made by the trial court, so far as the record discloses, on the objection as to the sufficiency of the complaint or the admissibility of the exhibits.

Likewise it was sought at the close of the evidence to amend the complaint by striking out certain words. The effect of this amendment was to change the allegations as to the date of the commencement of the foreclosure proceeding. As the complaint was originally drafted, it alleged the commencement of the action on July 1, 1924. The complaint offered in evidence disclosed that it was filed on November 28, 1924. No ruling was made by the trial court on the application to amend the complaint. The effect of the amendment, if allowed, would have been to conform the pleading in this respect to the proof as offered. Error is assigned on the failure of the court to rule

on the various objections, particularly those as to the admission of the exhibits and the application for leave to amend.

In the case of *Gilcrest* v. *Bowen*, 95 Mont. 44, 24 Pac. (2d) 141, this court condemned the practice of trial judges taking objections under advisement and not thereafter disposing of the same by an appropriate ruling. And again, in *Langston* v. *Currie*, 95 Mont. 57, 26 Pac. (2d) 160, we expressly approved what was said in the *Gilcrest Case*, and forecast that eventually it would be necessary for this court to reverse a cause before it because of the failure of the trial court to dispose of objections or motions which had arisen during the progress of the trial; we again repeat the prophecy there made. However, it was urged in the court below and it is again argued here, that the complaint does not state a cause of action for want of sufficient facts, and since that objection may be raised for the first time in this court, and in view of our conclusions with respect to the latter contention, the time has not yet arrived when we may with propriety reverse a judgment for the failure of a trial court to rule on objections or motions.

We will now proceed to a consideration of the question of the sufficiency of the complaint. It is not altogether clear from the brief and argument of plaintiff on what precise theory the complaint is founded. It is, however, argued that if it states a cause of action on any theory it must be sustained. It is suggested that it states a cause of action on some one of the following theories: A suit in equity for relief against a judgment secured through extrinsic fraud; a suit to remove a cloud on title; a suit to quiet title. We will first consider the sufficiency of the pleading on the theory of a suit in equity to relieve from a judgment obtained through extrinsic fraud practiced on the court.

This court has frequently held that relief may be obtained by a suit in equity to set aside and vacate a judgment obtained through extrinsic fraud, in the absence of an adequate and complete remedy at law. (*Hauswirth* v. *Sullivan*, 6 Mont. 203, 9 Pac. 798; *State ex rel. Happel* v. *District Court*, 38 Mont. 166, 99 Pac. 291, 129 Am. St. Rep. 636, 35 L. R. A. (n. s.) 1098;

*State ex rel. Thompson* v. *District Court,* 57 Mont. 432, 188 Pac. 902; *Bullard* v. *Zimmerman,* 82 Mont. 434, 268 Pac. 512; Id., 88 Mont. 271, 292 Pac. 730; *Kirby* v. *Hoeh,* 94 Mont. 218, 21 Pac. (2d) 732.) In order to secure this relief it is generally necessary for the plaintiff to plead and prove a prima facie good defense to the action in which the judgment sought to be set aside was rendered. (*Bullard* v. *Zimmerman,* 88 Mont. 271, 292 Pac. 730; *Kirby* v. *Hoeh,* supra.) It will be noted, however, that the extrinsic fraud charged in the two last-cited cases did not relate to the jurisdiction of the court. It is held by the great weight of authority that in a suit to enjoin a judgment for want of jurisdiction, a meritorious defense to the cause of action on which the judgment was based is necessary (*Braun* v. *Quinn,* 112 Neb. 485, 199 N. W. 828, 39 A. L. R. 411, 415; 3 Freeman on Judgments, 5th ed., 2468; see, also, *Hauswirth* v. *Sullivan,* supra); although in some jurisdictions where the defect lies in the failure to serve process on the defendant, it is sometimes held that it is unnecessary to plead a prima facie good defense, the great numerical weight of authority is to the contrary (3 Freeman on Judgments, 5th ed., 2468). However, the record in this case discloses that in the foreclosure proceeding all of the defendants were personally served with summons, and no intimation is made that any of the defendants were prevented from interposing a defense in that proceeding through fraudulent conduct. Hence this case cannot come within the exception noted, supra; but let it be understood that we are in nowise committing ourselves to the general rule or its exception by what is said herein, as applied to cases where the defect in jurisdiction is the failure to serve the defendant with process.

We conclude that in the absence of such a case where the defect in jurisdiction does appear on the face of the judgment-roll, a plaintiff in order to secure relief from a judgment on the ground of extrinsic fraud must plead and prove a prima facie meritorious defense.

The only defense suggested by counsel for the plaintiff is that ██ of the statute of limitations. It is said that the original mortgage is dead because the statute of limitations has run

against the debt. True, we have said that when the debt secured by a mortgage is no longer alive, the mortgage is thereby extinguished (*Berkin* v. *Healy,* 52 Mont. 398, 158 Pac. 1020; *Vitt* v. *Rogers,* 81 Mont. 120, 262 Pac. 164; *Jones* v. *Hall,* 90 Mont. 69, 300 Pac. 232; *Hillsdale College* v. *Thompson,* 99 Mont. 400, 44 Pac. (2d) 753; *Humbird* v. *Arnet,* 99 Mont. 499 , 44 Pac. (2d) 756) ; but in this case there is no allegation that the debt secured by the mortgage is barred by the general statute of limitations (sec. 9029, Rev. Codes 1921) ; nor is there any allegation negativing the filing of the affidavit of renewal under the provisions of section 8267; nor is there found any allegation that the mortgage has not been renewed or extended pursuant to the provisions of section 8264. A mortgage may be renewed or extended in accordance with the provisions of either section 8267 or 8264. (*O. M. Corwin Co.* v. *Brainard,* 80 Mont. 318, 260 Pac. 706; *Vitt* v. *Rogers,* supra; *Hastings* v. *Wise,* 89 Mont. 325, 297 Pac. 482; Id., 91 Mont. 430, 8 Pac. (2d) 636; *Register Life Ins. Co.* v. *Kenniston,* 99 Mont. 191, 43 Pac. (2d) 251.) The statute of limitations, according to some authorities, is said not to be a meritorious defense; others take a contrary view. (Note, 39 A. L. R. 427.) However, assuming for the purposes of this opinion, but not deciding that the statute is a meritorious defense, he who would seek the benefit of the general statute of limitations in order to defeat a real estate mortgage, even though he be a purchaser and not bound to pay the mortgage debt, must plead it; failing to plead it waives it. (*Reed* v. *Richardson,* 94 Mont. 34, 20 Pac. (2d) 1054.) The only manner in which it can be determined from plaintiff's complaint that the debt secured by the mortgage is barred by the statute of limitations, is the fact that at the commencement of this action more than eight years had elapsed since the maturity of the debt.

It will be borne in mind that the judgment-roll in the foreclosure action discloses no infirmity on its face. Counsel for the plaintiff has invited our attention to the case of *Lamont* v. *Vinger,* 61 Mont. 530, 202 Pac. 769, in support of his contention; but there the judgment-roll disclosed a want of jurisdiction in the court rendering the judgment from which relief was

sought. Also the case of *Soliri* v. *Fasso*, 56 Mont. 400, 185 Pac. 322, is relied upon; however, there likewise the want of jurisdiction was apparent on the face of the judgment.

The plaintiff having failed to disclose a prima facie defense as against the foreclosure proceeding, the complaint is insufficient on the theory of a suit in equity to secure relief from extrinsic fraud in the obtaining of the judgment.

It is argued that the complaint is sufficient as a suit to remove a cloud on the title of the plaintiff, as all that is required to state a cause of action in such a case is to allege the apparent validity of the instrument attacked and its actual invalidity, under the authority of *Poulos* v. *Lyman Bros. Co.*, 63 Mont. 561, 208 Pac. 598, and *Slette* v. *Review Publishing Co.*, 71 Mont. 518, 230 Pac. 580. In the latter case it was determined that the action was one to quiet title rather than one to remove a cloud, and in the *Poulos Case* the action was one to remove a cloud, but it did not involve the removal of a lien for which the land was bound to pay. It is generally held that where it is sought to remove a cloud of this character, as a condition precedent to the securing of relief, an offer must be made to do equity by offering to pay the amount of the mortgage debt. (*Hutson* v. *Hudelson,* 288 Ill. 454, 123 N. E. 524; *McEachern* v. *Brackett,* 8 Wash. 652, 36 Pac. 690, 40 Am. St. Rep. 922; see, also, *Hauswirth* v. *Sullivan,* supra.) Plaintiff has made no offer to do equity in this case in his complaint.

However, counsel for plaintiff asserts with confidence that since the adoption of the Codes and the abolition of forms of action, this time-honored principle of equity is without application. Section 9008, Revised Codes 1921, provides: "There is in this state but one form of civil action for the enforcement or protection of private rights and the redress or prevention of private wrongs." Section 28, Article VIII, of the Constitution declares: "There shall be but one form of civil action, and law and equity may be administered in the same action." This court in the case of *Kramlich* v. *Tullock*, 84 Mont. 601, 277 Pac. 411, 413, said: "It must not be forgotten that, while under the

code system of pleading the common-law distinctions of form of actions have been abolished, the substantial rights remain unchanged. (3 Cal. Jur. 375.) The reasons underlying the causes of action remain the same and plaintiff may not recover beyond the case stated by him in his complaint. (*Glass* v. *Basin & Bay State Min. Co.*, 31 Mont. 21, 77 Pac. 302; *Butala* v. *Union Electric Co.*, 70 Mont. 580, 226 Pac. 899; 3 Cal. Jur. 375.)" In the case of *State ex rel. Lewis and Clark County* v. *District Court*, 90 Mont. 213, 300 Pac. 544, 546, it was written: "There is but one form of civil action for the enforcing of private rights or redressing private wrongs in this state (sec. 9008, Rev. Codes 1921), but this provision refers only to the form and not to the substance, and does not abolish the distinction between causes of action which may proceed at law or in equity upon the issues presented." This court has frequently required, as a condition precedent to the granting of relief in equitable proceedings, an offer to do equity, as illustrated by the cases of *Mack* v. *Hill*, 28 Mont. 99, 72 Pac. 307, *Larson* v. *Peppard*, 38 Mont. 128, 99 Pac. 136, 129 Am. St. Rep. 630, 16 Ann. Cas. 800, and *Friedrichsen* v. *Cobb*, 84 Mont. 238, 275 Pac. 267.

The complaint is insufficient to state a cause of action on the theory of a suit to remove a cloud, in that it contains no offer to do equity.

Furthermore, if we treat the case as one to quiet title, the attack on the judgment thereby becomes collateral. (*Thompson* v. *Chicago, Burlington & Quincy R. Co.*, 78 Mont. 170, 253 Pac. 313.) In the case of *State ex rel. Delmoe* v. *District Court*, 100 Mont. 131, 46 Pac. (2d) 39, 42, we said with reference to the subject of collateral attack on judgments: "By 'collateral attack' is meant 'every proceeding in which the integrity of a judgment is challenged, except those made in the action wherein the judgment is rendered or by appeal, and except suits brought to obtain decrees declaring judgments to be void *ab initio*.' (*Burke* v. *Inter-State Savings & Loan Assn.*, 25 Mont. 315, 64 Pac. 879, 881, 87 Am. St. Rep. 416; *Haupt* v. *Simington*, 27 Mont. 480, 71 Pac. 672, 94 Am. St. Rep. 839.) In

the *Burke Case*, supra, this court said: 'Unless void on its face, or upon the inspection of the judgment roll, a judgment cannot be successfully attacked collaterally. * * * When, however, the judgment of a court of general jurisdiction, acting within the ordinary scope of that jurisdiction, is assailed collaterally, the presumption of jurisdiction over the person of the defendant is conclusive, unless upon the face of the judgment roll a lack of jurisdiction affirmatively appears. A judgment, when collaterally attacked, must be tried by inspection of the judgment roll, and by that alone.' '' Since it appears from the complaint that the alleged infirmity of jurisdiction does not appear on the face of the judgment-roll, and it cannot be inferred from the allegations of the complaint that it does so appear on the judgment-roll, plaintiff would be powerless, treating the action as one to quiet title in view of all the allegations of his complaint to show the infirmity as to jurisdiction; therefore the complaint fails to state a cause of action as one to quiet title, for plaintiff has qualified his general allegations of ownership and rights of possession by special allegations tending to show the nature and character of his right. Accordingly, we conclude that the complaint does not state a cause of action.

The cause of action attempted to be pleaded in plaintiff's com- plaint is barred by the statute of limitations, if we apply the *omnibus* section (9041), which provides that an action for relief not otherwise provided for must be commenced within five years after the cause of action has accrued, for the cause of action accrued on the entry of the judgment which occurred in 1925. If we consider the action as one to obtain relief on the ground of fraud, the cause of action attempted to be pleaded is barred by section 9033, Revised Codes 1921, which prescribes a limitation of two years for such an action, and subdivision 4 thereof, which provides: ''An action for relief on the ground of fraud or mistake, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake.'' The action was brought on August 31, 1933.

The evidence discloses that the plaintiff on November 4, 1930, knew some of the facts in this case; if he knew some of the facts at that time, he had discovered the fraud within the meaning of this section. In the case of *Ray* v. *Divers*, 81 Mont. 552, 264 Pac. 673, 674, this court said with reference to this statute: "Under this statute the settled rule is that the statute begins to run from the time the right of action accrues, but the cause of action is not deemed to have accrued until discovery of the alleged fraud. It is intended to protect a party who is in ignorance of his rights, until the alleged fraud perpetrated has been by him discovered, and whether it is necessary to plead facts tolling the statute, they must be proved. (*Kerrigan* v. *O'Meara*, 71 Mont. 1, 227 Pac. 819.) In the case above cited, Mr. Chief Justice Callaway, speaking for this court, made correct interpretation of the statute as follows: 'The word "discovery," as used implies that the facts have been concealed from the party relying upon the exception. "Discovery" and "knowledge" are not convertible terms, and whether there has been a discovery of the facts constituting the fraud within the meaning of the statute is a question of law to be determined from the facts proved. It is not enough for the plaintiff merely to say that he was ignorant of the facts at the time of their occurrence, and has not come into knowledge of them until within two years. "He must show that the acts of fraud were committed under such circumstances that he would not be presumed to have knowledge of them, it being the rule that if he has notice or information of circumstances which would put him on inquiry which if followed would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of the facts." (*Davis* v. *Hibernia Sav. & L. Soc.*, 21 Cal. App. 444, 132 Pac. 462; *Lady Washington Consol. Co.* v. *Wood*, 113 Cal. 482, 45 Pac. 809; *Truett* v. *Onderdonk*, 120 Cal. 581, 53 Pac. 26.) The plaintiff must show when the fraud or concealment was discovered, and the circumstances of the discovery must be shown, so the court may see whether by ordinary diligence it might not have been made before.' "

The cause of action attempted to be pleaded is barred by the statute of limitations. In view of our conclusions, it is unnecessary to discuss the other specifications of error.

Judgment affirmed.

ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

MR. CHIEF JUSTICE SANDS did not hear the arguments and takes no part in the foregoing decision.