ORIN R. CURE, as Executor of the Estate of BERNAL SOUTHWICK, Plaintiff and Appellant, v. HELEN SOUTHWICK, Defendant and Respondent.

No. 9960.

Submitted January 12. 1960. Decided February 23, 1960.

349 Pac. (2d) 575.

Hoffman & Cure, Great Falls, for appellant. Orin R. Cure argued orally.

Hall, Alexander & Kuenning, Great Falls, for respondent. John H. Kuenning argued orally.

HONORABLE PHILIP C. DUNCAN, District Judge, sitting in place of MR. CHIEF JUSTICE HARRISON, delivered the Opinion of the Court.

Bernal Southwick, the husband and original plaintiff and appellant herein, died subsequent to the perfection of the appeal and his executor was substituted by order of this court.

This is an appeal from an order setting aside the default of the defendant wife in a divorce action and vacating the judgment and decree of divorce obtained against her.

On October 13, 1955, the wife commenced a separate maintenance action against her husband in the district court of Cascade County. On the same day, in that action, summons was served on the husband and an order requiring the husband to appear on October 27, 1955, and show cause why he should not be required to pay his wife support and maintenance money and her costs of action and attorney's fees.

On October 24, 1955, the divorce action was filed by the husband in the same court and summons was served on the wife on November 3, 1955.

On November 2, 1955, the husband appeared in the separate maintenance action by filing and serving a motion to strike. As to the hearing on the order to show cause pending in this action, the same appears to have been continued from time to time

and never heard, the last continuation being made on November 23, 1955, the day the wife's appearance was due in the divorce action, to December 7, 1955. The motion to strike was never called up for hearing or otherwise disposed of.

On January 12, 1956, the husband and wife entered into and signed a written agreement, prepared by the husband's attorney, reciting that both the separate maintenance and divorce actions were pending and that the parties had reached an agreement as to the temporary support and attorney's fees which the husband "may be required or called upon to pay on account of both actions". The agreement then provides among other things that the husband shall pay the wife $250 per month during the pendency of the separate maintenance action and the husband shall pay Robert T. Merrill (the wife's then attorney) $1,000 for the wife's attorney's fees in both actions; that upon execution of the agreement the order to show cause in the separate maintenance action shall be dismissed by the wife; that the monthly support payments shall continue during the pendency of the divorce action; that if judgment is entered in the separate maintenance action, such judgment shall supersede the agreement. Concurrently with the execution of the agreement a stipulation was prepared by the husband's attorney and signed by the husband providing that the order to show cause in the separate maintenance action may be dismissed. The wife never signed the stipulation, but the husband's attorney assumed she had and never knew otherwise until he read the affidavit of Robert T. Merrill in support of the motion to set aside the default. When the agreement was signed the husband paid Merrill the $1,000 attorney's fee and began to make to his wife the payments provided and continued making them until the entry of the divorce decree.

On July 25, 1956, the default of the wife was entered in the divorce action. The husband's attorney and the wife's then attorney, Robert T. Merrill, had their offices in the same building in Great Falls and it appears that on several occasions, includ-

ing times subsequent to the making of the agreement and the entry of the default, the two attorneys met and discussed the litigation, including tardiness of the husband in making the payments required of him under the agreement, but Merrill was never advised of the entry of the default.

Merrill was absent from the state from August 10, 1957, to September 7, 1957, and during that time and on August 22, 1957, the husband appeared in court and secured a decree of divorce.

On September 9, 1957, a Monday, Merrill returned to his office and first learned of the default and the decree of divorce.

On September 10, 1957, the defendant wife filed her motion to set aside the default and vacate the judgment and decree entered in the divorce action, stating that the motion would be made upon the grounds that the default was taken against her through mistake or excusable neglect of her counsel, upon the notice of hearing of the motion, the affidavits of herself and Merrill filed with the motion, and upon the pleadings, papers, files and records in the action. Also on September 10, 1957, the present attorneys for the wife were substituted for Robert T. Merrill.

Thereafter, on written stipulation of counsel, the motion was submitted to the court on written briefs and on April 10, 1958, the court granted the motion and made the order from which this appeal is taken.

On September 4, 1958, after perfection of this appeal, the husband died testate leaving considerable property subject to administration. In his will of March 10, 1958, the husband describes himself as a single man and makes no provision for appellant wife.

The foregoing appears to be the undisputed facts. The disputed facts almost entirely involve the discussions between the husband's attorney and Merrill while he was the wife's attorney.

Merrill, in his affidavit, states that there were a number of

6

conversations about reconciliation; that on November 10, 1955, the husband's attorney assured Merrill that negotiations for a reconciliation were open and it would not be necessary for the wife to file a formal appearance in the divorce action and the default of the wife would not be entered; that subsequently and prior to January 1, 1956, it gradually became apparent to Merrill that reconciliation was not possible at that particular time and the husband's attorney agreed and drew the agreement and stipulation of January 12, 1956, and delivered them to Merrill, and at the time of the delivery the two attorneys discussed trying the separate maintenance action on its merits, but no mention was made of the divorce action; that on several occasions subsequent to the making of the agreement the two attorneys discussed the tardiness of the husband in making payments under the agreement, and on each occasion the discussion was such as to cause Merrill to believe that no further action would be taken in the divorce action without prior discussion between the attorneys.

The husband's attorney, in his affidavit, states that when he filed the husband's appearance in the separate maintenance action he discussed the divorce action with Merrill; that at all times he informed and advised Merrill that Merrill should enter an appearance in the divorce action and that unless Merrill did so the wife's default would be taken; denies discussing with Merrill at various times the possibility of reconciliation, but says he advised Merrill a reconciliation was not possible and that a decree of separate maintenance was not the solution, that the wife was solely interested in getting money and had married the husband and plied him with drink for that reason, and at all times informed Merrill that the only solution was a decree of absolute divorce; denies that negotiations for reconciliation were ever open; denies he ever informed Merrill that it would not be necessary for the wife to enter an appearance in the divorce action and her default would not be taken; that he warned Merrill to enter an appearance or the default would

be taken and Merrill failed and refused to heed the warnings; that he never discussed with Merrill the trying of the separate maintenance action but did discuss trying the divorce action and made it clear to Merrill that the divorce case would be pressed to issue and tried. It is further pointed out in the affidavit that the rules of the lower court provide that any agreement between counsel must be in writing, and that no writing or stipulation was entered into agreeing to grant the wife additional time within which to plead or agreeing that her default would not be entered; that Merrill knew or should have known that the wife's appearance was due in twenty days; that default was not entered until more than eight months after appearance was due; that decree was not entered until more than one year after entry of default.

At the outset we are confronted with a motion of the respondent wife to dismiss the appeal on two grounds: (1) An appeal does not lie from an order setting aside a default and vacating a judgment and decree; and (2) The appeal has been destroyed by the death of the appellant husband. However, considering the disposition we are about to make of this case, we do not believe it necessary to mention the motion further.

Appellant initially argues that the respondent's motion to set aside the default is upon the ground that the default was taken against her through the mistake or excusable neglect of her counsel and hence is made under the provisions of R.C.M. 1947, section 93-3905, providing that ''The court may * * * relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect; provided, that application therefor be made within reasonable time, but in no case exceeding six months after such judgment, order, or proceeding was taken.'' Also, that the affidavits on behalf of respondent do not show any mistake but do show inexcusable neglect by the respondent's attorney; that in any event the motion is too late, having been made far more than six months

after the entry of the default, the six months time provided by the statute beginning as of the date of the entry of the default and not the date of the entry of the judgment, citing Galbreath v. Aubert, 116 Mont. 490, 157 Pac. (2d) 105. Appellant also initially makes some contention that respondent has not shown a meritorious defense; that since the rules of the trial court provide that any agreement between counsel must be in writing and there was no writing, respondent is not only bound by the statute but by the court rule.

Respondent answers that here we have a case of constructive extrinsic fraud of counsel for appellant inducing the mistake or excusable neglect of respondent's former counsel and that the statutory time limitation does not apply to fraud cases.

Appellant replies that there was no fraud; that if there ever was an agreement it is barred by the court rule; that the court is asked to reverse Galbreath v. Aubert, supra; that in any event respondent's remedy was a suit in equity.

Respondent's motion to set aside the default and vacate the ██ decree is broad enough to include constructive extrinsic fraud grounded, as it is, on the affidavits filed and served concurrently therewith as well as on the other grounds stated therein. See Hall v. Hall, 70 Mont. 460, 226 Pac. 469. Further, a court of general jurisdiction has the right, entirely independent of statute, to grant relief against a judgment obtained by extrinsic fraud, and may grant that relief either on motion in the original cause or upon a separate equity suit, and after the period prescribed by the statute relied upon by appellant, Gillen v. Gillen, 117 Mont. 496, 159 Pac. (2d) 511, and cases cited therein. See also Hall v. Hall, supra. This is also the law in California under almost identical statutes, 29 Cal. Jur. (2d) pages 46, 47, 48, and in other jurisdictions, annotations in 22 A.L.R. (2d) page 1312 and 157 A.L.R. page 6. Galbreath v. Aubert, supra, relied upon by appellant, did not involve fraud and so is inapplicable here.

True the Gillen case, supra, deals with actual extrinsic fraud,

but it is immaterial as to whether the fraud is actual or constructive, Kirby v. Hoeh, 94 Mont. 218, 21 Pac. (2d) 732; Bullard v. Zimmerman, 88 Mont. 271, 292 Pac. 730.

"It is not necessary to hold that the acts in question were done with intent or design to deceive; but the test is: Did they mislead and thereby induce a party to omit the assertion of a right?" Kirby v. Hoeh, supra, 94 Mont. at page 227, 21 Pac. (2d) at page 735.

The trial court must have answered this question in the affirmative and so found in granting the motion and making the order complained of.

The findings in the lower court on a motion to set aside a default and judgment based on conflicting affidavits are compelling, Beller v. Le Boeuf, 50 Mont. 192, 145 Pac. 945; Middlefork Cattle Co. v. Todd, 49 Mont. 259, 141 Pac. 641; Deyl v. Deyl, 88 Cal. App. (2d) 536, 199 Pac. (2d) 424. We are not disposed to overrule him. Beller v. Le Boeuf, supra.

Also, this court has declared many times that default judgments are not favored; that although slight abuse of discretion in refusing to set aside a default judgment is sufficient to justify a reversal, only in exceptional cases will this court disturb the action of a trial court in reopening a default; that when a motion is made and is supported by a showing which leaves the court in doubt or upon which reasonable minds might reach different conclusions, the doubt should be resolved in favor of the motion. Worstell v. Devine, 135 Mont. 1, 335 Pac. (2d) 305; Holen v. Phelps, 131 Mont. 146, 308 Pac. (2d) 624; Waggoner v. Glacier Colony of Hutterites, 127 Mont. 140, 258 Pac. (2d) 1162; Nash v. Treat, 45 Mont. 250, 122 Pac. 745.

As to the rule of trial courts requiring agreements between counsel to be in writing, such a rule does not apply where it may be involved in the fraud charged and will not be considered by this court, Bullard v. Zimmerman, 82 Mont. 434, 268 Pac. 512. See also 29 Cal. Jur. (2d) section 126, page 48.

Finally, with respect to the contention that respondent has

not shown she has a meritorious defense, suffice it to say that we have examined her affidavit of merits and are satisfied that she has set out sufficient facts to constitute, prima facie, a meritorious defense.

The order appealed from is affirmed.

MR. JUSTICES ADAIR, ANGSTMAN, and THE HONOR-ABLE GEORGE J. ALLEN, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur.

MR. JUSTICE CASTLES:

I dissent.

R.C.M. 1947, section 93-3905, provides a six-months limitation for relief from default upon the grounds stated in the respondent's motion. In Galbreath v. Aubert, 116 Mont. 490, 157 Pac. (2d) 105, this court has held the taking of the default as being the time which starts the running of the six-months period. In the instant case the motion was not made until almost fourteen months later.

I agree with the majority opinion in that for fraud, whether it be actual or constructive, the six-months limitation would not bar an action to set aside a default—but if, and only if, it is brought as an equity action. In the instant case the ground of fraud was not set out in the motion. The motion was brought clearly under section 93-3905. The affidavits revealed that it was inexcusable neglect on the part of previous counsel. Under such a showing, the motion was barred and should have been denied.

I also disagree in that I do not feel that any showing of fraud on the part of plaintiff's counsel was made, or could have been made, under the grounds stated in the motion to set aside the default.