EABLONSKI, Respondent, v. CLOSE, Appellant.

(No. 5,425.)

(Submitted March 12, 1924. Decided April 16, 1924.)

[225 Pac. 129.]

*Livestock—Trespass—Destruction of Crops—Actual Value—Evidence—When Proper—Exemplary Damages—Trial—Failure to Object to Improper Testimony—Appeal and Error.*

Livestock—Trespass—Damages—Absence of Market Value—True Value—Evidence—Admissibility.
1. Where an article for the destruction or conversion of which damages are sought has no market value, its actual value may be proved for fixing the amount of damages, and in such a case a considerable range of investigation should be permitted.

Same—Value—Evidence.
2. In an action for damages for the destruction of rye and blue-joint hay by defendant's sheep, testimony that the market value of timothy hay was $30 per ton, that the value of blue-joint was one-fourth more and that of rye one-half less than timothy, *held* to have been a sufficient showing of value of the two latter varieties to entitle the case to go to jury on the question of value.

Same—Value—Erroneous Instruction—When Harmless Error.
3. Where an action for damages for the destruction of a hay crop by trespassing sheep was tried on the theory that there was no market value for the hay in the vicinity of plaintiff's farm, and the court correctly instructed the jury in one section of a paragraph of the charge as to how to arrive at the damages recoverable, the fact that in another portion of the instruction it gave an erroneous exposition of the law with relation to value, as to which there was no testimony to make it applicable, was error without prejudice.

Same—Value—Instructions.
4. Testimony that plaintiff intended to use hay destroyed by trespassing animals for feeding purposes and that its value for that

purpose was $15 a ton was a sufficient showing to warrant an instruction on the measure of damages based on what it was worth to plaintiff as a feeding product.

Same—Absence of Market Value—Pleading.

5. Where plaintiff had established that there was no market value in his vicinity for hay destroyed by trespassing livestock, a special pleading showing its actual value was not necessary to make proof thereof admissible in evidence.

Appeal and Error—Instructions—Extent of Review.

6. Under section 9349, Revised Codes of 1921, the supreme court is prohibited from taking cognizance of any objection to an instruction not specifically pointed out in the trial court.

Livestock—Trespass—Exemplary Damages—Evidence—Sufficiency.

7. Where the evidence in an action for the destruction of a hay crop by defendant's sheep showed that the animals were held on plaintiff's field by a herder on authorization by defendant, and that the herder tore down plaintiff's fence cutting his wires with a pair of pliers which he stated were carried for such purposes, it was sufficient to go to the jury upon the subject of exemplary damages.

Trial—Improper Admission of Testimony—Failure to Object—Effect.

8. A party who sits by and permits improper testimony to be introduced without objection and then cross-examines the witness upon it may not on appeal complain of its reception.

Livestock—Trespass—Damage Done by Other Animals—Presumptions.

9. In an action for damages for the destruction of a certain hay crop by defendant's sheep, one of plaintiff's witnesses testified that he also saw horses and cattle on the place, without, however, stating on what portion of the farm they were. *Held*, that on appeal it may not be presumed that, in the absence of evidence establishing the whereabouts of the horses and cattle, they were on that part of the place where the hay crops in question were located and thus aided in its destruction.

*Appeal from District Court, Rosebud County; Geo. A. Horkan, Judge.*

ACTION by Antoni Eablonski against Willis Close. Judgment for plaintiff and defendant appeals. Affirmed.

*Mr. Geo. W. Farr* and *Mr. I. S. Crawford,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Clyde Hayden,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE STARK delivered the opinion of the court.

Plaintiff brought this action to recover damages from the defendant for the loss of certain crops of hay which it is al-

leged were totally destroyed by defendant's sheep trespassing thereon. The crops involved consisted of 130 acres of rye hay, which the testimony disclosed would have cut about sixty-five tons, and twenty acres of blue-joint hay which would have produced fifteen tons but for their destruction. The case was tried before a jury, and resulted in a judgment in favor of the plaintiff for $500 and costs. Defendant made a motion for a new trial, which was denied. The appeal is from the judgment.

In the year 1919 the plaintiff owned 320 acres of land, upon a portion of which the above-mentioned crops were grown. In July of that year he left his place and went to North Dakota to work in the harvest fields, returning about October 8. Plaintiff testified that he did not cut the rye and blue-joint hay because he thought it would pay him better to leave it stand for hay, and that he expected to feed his horses on it right in the field. The testimony showed that these crops were totally destroyed during his absence.

Ed. Luger, who was in charge of defendant's sheep as his manager, and called as a witness for plaintiff, testified that he employed one Ernest Richenback to herd these sheep from the middle of September to the 8th of October, and numerous witnesses testified that they saw the band of sheep on plaintiff's land in charge of this herder on many occasions during that time.

Without objection, plaintiff was allowed to testify that on the morning of his return from North Dakota he found this band of sheep on his land in charge of Richenback, and as to certain statements made to him at that time tending to show that they had been placed there by direction of the defendant. One of plaintiff's witnesses testified that he saw Richenback herding the sheep on the plaintiff's place, and remonstrated with him, whereupon the latter said: "You go to hell. You ain't boss on that place." Other witnesses testified to having seen the sheep on the place at different times and one of them

stated that he talked with the herder while he was holding the sheep thereon, and in the course of the conversation the herder said that he had a pair of pliers which he carried around for cutting wires; and the witness continued: "I saw him pull out a post and turn it over to get the wires cut" on the north side of the place. All these matters were denied by defendant's witnesses.

While he was testifying as plaintiff's witness the defendant's foreman, Ed. Luger, said, speaking of a trip which he made to plaintiff's place: "I came by there and saw some cattle and horses there. That was about the 10th or 12th of September. These cattle were in his field and west of his house along the coulee, probably ten or twelve head, I should think, I would not say the exact number, running there on the place."

As to the quantity and quality of the hay grown upon plaintiff's place and standing thereon prior to the time of the alleged trespasses, and whether the defendant's sheep in fact trespassed upon and destroyed the same, there was a sharp conflict in the evidence; but there was sufficient to justify the jury in finding that hay was grown upon the ranch and that it was destroyed by defendant's sheep.

Defendant's first two assignments of error relate to the admission of certain testimony for the purpose of proving the [1] value of the hay crops alleged to have been destroyed. One of the plaintiff's witnesses testified in reference to the value of the blue-joint hay that there was no hay of that kind bought or sold in the neighborhood of plaintiff's ranch during that year, for the reason that it was of such good quality that the ranchers kept it for their own use, and so there was no established or known market value therefor. The same witness testified that there was a market value for timothy hay at that time and place, that it was $30 per ton, and that blue-joint hay had an intrinsic value for feeding purposes of twenty-five per cent more than timothy hay. The same witness testified that he knew the value of rye hay for feeding purposes in

comparison with other kinds of hay like timothy; that the rye hay was about half the value of timothy hay, and that its value at that time for stock-feeding purposes was $15 per ton. It was shown by other testimony that no rye hay was bought or sold in the neighborhood of plaintiff's place during the year 1919 because the farmers all kept what was raised for their own use.

The foregoing testimony as to value was admitted over objection of the defendant that no foundation therefor had been laid, that it was incompetent, and not a proper basis for fixing the amount of damages. The general rule in cases of this kind is that, in order to entitle a party to prove the actual value of property as the basis for fixing the amount of damages for its destruction or conversion, it must first be made to appear in evidence that such property has no market value. (13 Ency. of Evidence, 510; *Continental O. & C. Co.* v. *Wristen* (Tex. Civ. App.), 168 S. W. 395; *Lundvick* v. *Insurance Co.,* 128 Iowa, 376, 104 N. W. 429; *McCarthy* v. *Blackwell* (Tex. Civ. App.), 162 S. W. 1163; *Allen* v. *Railway Co.,* 145 Wis. 263, 129 N. W. 1094.)

The above-mentioned testimony sufficiently showed that at the time and place in question there was no fixed or determinable market value for blue-joint or rye hay, and brought the case within the rule permitting proof of its actual value as a basis of determining the damages to be allowed for its destruction. Under such circumstances a considerable range of investigation should be permitted. The witness who testified as to the value fully qualified himself upon this matter. His **[2]** statement that the market value of timothy hay was $30 per ton, that the actual value of blue-joint was one-fourth more and of rye-hay one-half less than timothy, was a sufficient showing of value of the two latter varieties to entitle the plaintiff to have his case submitted to the jury.

Defendant's next assignment of error relates to the giving of **[3]** instruction No. 6, which is as follows: "The jury are in-

structed that the measure of damages for the destruction of the
blue-joint hay if you find that there was a destruction of any
blue-joint hay, is the value of the said blue-joint hay in the
condition the same was at the time and place of the destruction,
if you find the same was destroyed, and in arriving at the
measure of damages in such case you should take into con-
sideration and deduct from said value the cost of cutting, har-
vesting, and marketing the same. But if you further find from
the evidence that said hay had no market value in the par-
ticular vicinity of the plaintiff's ranch, then you may take into
consideration in lieu of the market value of said hay what, if any,
value the preponderance of the evidence shows said hay had
in the particular community to the plaintiff in the action as
a feeding product.''

The objection to the first paragraph of this instruction was
that it failed to advise the jury that in arriving at the net
value of the crop they should take into consideration the cost
of *production* as well as the cost of cutting, harvesting, and
marketing the same, and, further, that there was no evidence
in the case as to the cost of *marketing*. No objection whatever
was made to the last paragraph of the instruction. The case
was tried solely upon the theory that there was no ascertain-
able market value for this hay, and that the damages, if any,
sustained by plaintiff should be determined in the method
pointed out in the last paragraph, and no testimony whatever
was introduced to which the first paragraph could have been
made applicable. So that, even though the first paragraph was
technically erroneous, it could not have affected defendant's
rights in the premises, and it was error without prejudice.

The next assignment of error relates to the giving of in-
struction No. 7, which was identical with instruction No. 6
[4] except that it related to rye hay instead of blue-joint.
The objections to this instruction were the same as to instruc-
tion No. 6, and, in addition thereto, that there was no evidence
that the rye crop had any value to the plaintiff for feeding

purposes or otherwise. What has been said concerning the first paragraph of instruction No. 6 is equally applicable to this one. As to the remaining objections, it is only necessary to refer to the statement of the testimony which showed that plaintiff intended to use the rye hay for feeding purposes and the testimony as to its value to demonstrate that the objections to the instruction are not tenable upon the grounds stated.

As heretofore indicated, it was competent for the plaintiff, [5] under the circumstances disclosed, to make proof of the actual value of the hay destroyed in lieu of its market value in order to establish the amount of the injury sustained by its destruction, and for this reason counsel's contention that such actual value should have been specially pleaded to make proof thereof admissible is without merit.

The court by its instruction No. 4 authorized the jury to [6] award exemplary or punitive damages. While the wording of the instruction was not technically correct, there was no objection to it on that ground, the only objection to it being that there was no evidence in the case tending to establish that the alleged trespasses were committed by defendant's employees by his direction or under his authority. Under the provisions of section 9349, Revised Codes of 1921, this court is specially prohibited from considering any objection to an instruction which was not specifically pointed out in the lower court; so we may only consider whether there was any evidence that the alleged trespasses were committed by authorization of the defendant.

As above pointed out, there was testimony tending to show [7] that the sheep were held on plaintiff's crops by authorization of the defendant, and the herder in charge of them was at one time seen in the act of tearing down plaintiff's fence and cutting the wires with a pair of pliers which he declared were carried for such purposes. It is true that some of this testimony might and should have been excluded upon proper and timely objection, but no such objection was made. Counsel

[8]　sat by and permitted the same to be given without any objection and then cross-examined the witness upon it; he cannot now be heard to say that there was no evidence in the case which tends to establish the very matter to which this testimony referred. (*Poindexter & Orr Live Stock Co. v. Oregon Short Line R. R. Co.*, 33 Mont. 338, 83 Pac. 886.)

We hold that there was sufficient evidence to go to the jury upon the subject of exemplary or punitive damages.

Finally, counsel contend that, because the witness Luger, [9]　when testifying for plaintiff, said that in September he saw ten or twelve head of horses and cattle on plaintiff's place, the plaintiff should not recover because it was not shown what part of the crops was destroyed by defendant's sheep and what portion was destroyed by these cattle and horses. The testimony of the witness Luger in this connection is conspicuous for what it failed to show rather than for what it did show. The plaintiff's farm consisted of 320 acres, of which twenty acres was grass land which was cut for hay, thirty acres were in pasture, 130 acres sown to rye, eighteen acres to wheat, five acres to millet, fourteen acres to corn. The plaintiff in this action sought to recover only for damages to the 130 acres of rye and the twenty acres of hay land. Whether the horses and cattle which Luger saw were in the pasture or in the wheat, grain or millet, or on the rye and grass land, he did not say. We cannot presume that they were on that portion of the ranch where the crops in question were located so as to enable counsel to invoke the rule for which they contend.

No prejudicial error appearing in the record, the judgment appealed from is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.