BAKER, RECEIVER, RESPONDENT, *v.* CITIZENS' STATE BANK OF ST. PETER, MINN., ET AL., APPELLANTS.

(No. 6,257.)

(Submitted February 13, 1928.  Decided February 20, 1928.)

[264 Pac. 675.]

*Banks and Banking—Insolvency—Recovery of Collateral Held by Correspondent Bank—Promissory Notes—Consideration— Appeal — Equity Cases — Review of Evidence—Findings— Evidence.*

Appeal—Equity Cases—Extent of Review of Evidence.
  1.  Since in equity cases and cases tried by the court without a jury a new trial cannot be granted on the ground of insufficiency of the evidence, the contention that, in the absence of a motion for a new trial, the supreme court in passing upon the sufficiency of the evidence to sustain the findings of the court can go no further than to determine whether the record contains any substantial evidence in their support, has no merit.

Same—Findings—When Controlling.

2. In equity cases and cases tried by the court without a jury the sufficiency of the evidence may be challenged on appeal from the judgment, subject to the rules that unless the evidence strongly preponderates against the court's findings, or if there is a sharp conflict in the evidence, or if it furnishes reasonable grounds for different conclusions, they will not be disturbed.

Same—Review of Evidence—Judgment Presumed Correct.

3. On entering upon a review of the evidence to determine whether it is sufficient to support a judgment, the supreme court indulges the presumption that the judgment is correct; it will draw every legitimate inference from the evidence to support that presumption, and view the testimony in the light most favorable to the prevailing party and consider established every material fact which it tends to prove.

Banks and Banking — Insolvency — Collateral Held by Correspondent Bank—Accounting — Evidence — Books of Account—Failure to Object to Introduction—Appellant Estopped to Assert on Appeal That Books not Before Court.

4. Where the receiver of an insolvent bank in an action against another bank for an accounting relative to certain collateral held by the latter, was permitted without objection to introduce books of the former, letters and other documents without objection by defendant and defendant cross-examined the witnesses on their testimony therefrom, defendant was precluded from asserting on appeal that the books, etc., were not properly before the court and that there was no evidence to establish the matters to which the testimony referred.

Same—Officer in Control of Books may not Discredit Them—Effect of Effort on Testimony of Witness.

5. The testimony of an officer of a bank who had control and supervision of its books and, in seeking to discredit them, testified that he "understood" that entries therein meant a certain thing instead of making the assertion of a positive fact, *held* to have been materially weakened, if not destroyed, thereby.

Same—Promissory Notes—What not Valid Consideration.

6. The performance of an act which the law requires to be done is not a valid consideration; hence where a note held by a bank was transferred to a stockholder in return for payment by him of an assessment levied against him as required by law, to make good an impairment of the bank's assets, there was no consideration for the note, and it having found its way into another bank long after its date of maturity and the amount thereof collected by it, the latter was not an innocent purchaser and the proceeds thereof belonged to the first bank.

Same—Bank Holding Collateral Belonging to Correspondent Bank may Sell Same to Reimburse Itself for Bonds Held by Latter Which It Refuses to Return.

7. Where a bank had in its possession bonds belonging to a correspondent bank, and the latter held notes as collateral belonging to the former, the correspondent bank had the right

---

2. See 2 Cal. Jur. 820; 2 R. C. L. 187, 202.
3. See 2 Cal. Jur. 884; 2 R. C. L. 220.
6. Promise to do duty as sufficient consideration, see note in 34 L. R. A. 37. See, also, 6 Cal. Jur. 179; 3 R. C. L. 934; 6 R. C. L. 656.

[81 Mont. 543.]

to apply the proceeds of such notes to reimburse itself to the amount of the value of the bonds which the holding bank refused to return.

---

[1, 2] Appeal and Error, 3 **C. J.**, sec. 909, p. 988, n. 44; 4 **C. J.**, sec. 2869, p. 900, n. 96; sec. 2870, p. 900, n. 98.
[3] Appeal and Error, 4 **C. J.**, sec. 2739, p. 786, n. 29, 31.
[4] Appeal and Error, 3 **C. J.**, sec., 730, p. 808, n. 91.
[5] Evidence, 23 **C. J.**, sec. 1779, p. 38, n. 29.
[6] Banks and Banking, 7 **C. J.**, sec. 519, p. 742, n. 57. Bills and Notes, 8 **C. J.**, sec. 693, p. 476, n. 14. Contracts, 13 **C. J.**, sec. 207, p. 351, n. 27; sec. 208, p. 351, n. 29; sec. 209, p. 353, n. 45.
[7] Banks and Banking, 7 **C. J.**, sec. 507, p. 737, n. 5.

*Appeal from District Court, Fergus County; John C. Huntoon, Judge.*

ACTION by C. E. Baker, as receiver of the First State Bank of Coffee Creek, Montana, against the Citizens' State Bank of St. Peter, Minnesota, and others. From a judgment for plaintiff, defendants appeal. Affirmed.

*Mr. E. K. Cheadle* and *Mr. Norman R. Barncord,* for Appellants, submitted a brief; *Mr. Cheadle* argued the cause orally.

*Mr. Ralph J. Anderson,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The Coffee Creek State Bank failed, and C. E. Baker was duly appointed and qualified as its receiver in February, 1924, at which time the Citizens' State Bank of St. Peter, Minnesota, held numerous promissory notes belonging to the Coffee Creek bank, as security for the repayment of borrowed money, and a second group of notes which had been tendered it as payment for certain Liberty bonds loaned to the Coffee Creek bank and tender refused.

The receiver determined, from an examination of the books in his possession, that the collateral was pledged only as security for the repayment of $1,000 borrowed money for

which a certificate of deposit had been issued to N. H. Olson, cashier of the defendant bank, and accordingly made demand upon the defendant bank for a statement as to the amount due on the certificate and delivery to him of the notes, on payment of such amount. The demand was refused upon the ground that the collateral was pledged to secure the payment of all outstanding indebtedness of the Coffee Creek bank to the defendant bank.

The receiver then brought this action to determine the rights of the respective parties in and to the two groups of notes, for an accounting, and to determine whether the defendant bank had acquired title to a certain note made by one E. V. Murray to the Coffee Creek bank which was not included in either of the groups of notes delivered as above stated. He joined one M. E. Anderson, cashier of the Coffee Creek bank at the time it closed, and a party whose name was unknown, as defendants for the purpose of restraining them from securing renewals of any of the notes in the name of the defendant bank pending suit.

The only issues joined by answer were (1) as to whether the first group of notes were pledged to secure the payment of the $1,000 certificate of deposit, or all outstanding indebtedness including two additional certificates of $2,500 each; (2) as to whether the Murray note was purchased by the defendant bank for a valuable consideration or wrongfully delivered to it without consideration; and (3) as to whether defendant bank had a right to hold the notes tendered in payment for the bonds, after refusing to accept them in payment.

The action was in equity, and was tried by the court without a jury, and, on the evidence adduced, the court found for the plaintiff on each issue presented, determined the amount of indebtedness secured by collateral, and thereupon entered judgment in favor of the plaintiff.

The accounting rendered on the findings and incorporated in the judgment fixes the amount due defendant bank on the

$1,000 certificate of deposit and the $1,500 Liberty bonds as $1,892.60, the amount due plaintiff from the defendant bank for moneys wrongfully received on the Murray note as $1,195, and from collection of certain notes tendered in payment for the bonds, as $773.39, while the defendant bank still retained notes in this second group, of the face value of $686.44. Judgment was rendered for the difference between the amount due defendant bank and the three items mentioned, or $762.23, but with the further order that, if defendant bank delivered the last-mentioned notes to the clerk of the court within 30 days, the judgment should be satisfied to the extent of the face value of the notes. The judgment directed the delivery of the collateral to the plaintiff.

The defendants have appealed from the judgment. By their assignments of error and by brief they question the sufficiency of the evidence to support the findings on each of the issues raised and decided.

1. At the outset, counsel for plaintiff contends that, as [1, 2] defendants did not move for a new trial, we can go no further into the record than to determine whether it contains any substantial evidence in support of the findings, citing authorities announcing such rule. This rule is not applicable here as a new trial cannot be granted on the ground of insufficiency of the evidence in equity cases and cases tried by the court without a jury (sec. 9396, Rev. Codes 1921), and, if a motion cannot be granted, the court will not require the idle ceremony of moving in order to bring a party within the rules which permit this court to review the evidence. In such a situation the sufficiency of the evidence may be challenged on appeal from the judgment, subject to the general rules that the decision of the trial court will not be reversed unless it is shown that the evidence strongly preponderates against the court's findings, and, where there is a sharp conflict in the evidence and it furnishes reasonable ground for differing conclusions, the findings will not be disturbed. (*Shepherd & Pierson Co.* v. *Baker,* ante, p. 185, 262 Pac. 887; *Anaconda*

*Nat. Bank* v. *Johnson,* 75 Mont. 401, 244 Pac. 141; *Solberg* v. *Sunburst Oil & Gas Co.,* 76 Mont. 254, 246 Pac. 168.)

2. We enter upon a review of the evidence indulging the [3] presumption that the judgment is correct (*State ex rel. Woare* v. *Board of Commrs.,* 70 Mont. 252, 225 Pac. 389); every legitimate inference will be drawn from the evidence to support this presumption (*Security State Bank* v. *Soule,* 70 Mont. 300, 225 Pac. 127); and the testimony will be viewed in the light most favorable to plaintiff and considered as establishing every material fact which it tends to prove (*Awbery* v. *Schmidt,* 65 Mont. 265, 211 Pac. 346).

3. As to the first issue joined, it is clear that in 1923 the [4] Coffee Creek bank borrowed $1,000 from the defendant bank and issued a certificate of deposit therefor to N. H. Olson, its cashier, and that then and subsequently the former pledged certain promissory notes to the defendant bank as collateral security for borrowed money, which security applied to the $1,000 certificate. It is also clear that the Coffee Creek bank issued two additional certificates of deposit for $2,500 each to Olson as cashier of the defendant bank, but as to whether the collateral applied to them or not is in dispute.

Without objection, plaintiff introduced all of the books of the Coffee Creek bank and copies of letters of transmission of "collateral notes" and renewal notes to be substituted for notes theretofore held. The letters recite that the notes are delivered as collateral for "borrowed money" or "certificates of deposit for borrowed money." On the books of the bank the letters "B. M." are indorsed after the entry of certain certificates of deposit; these being the Olson $1,000 certificate and two others for $1,000, each issued to banks not involved in this litigation.

Without objection, the receiver testified that the books of the bank showed that the bank carried but $3,000 in certificates of deposit for borrowed money and that those books showed "definitely" that the collateral was given as security for the $1,000 certificate alone.

The report of the deputy state examiner who made the examination on which the bank was closed, in his report of December 31, 1923, designated the "closing report," listed the three certificates, after which appears the indorsement "B. M.," as all the bank's certificates of deposit "issued for borrowed money," and listed all of the collateral held by the defendant bank as "collateral pledged with No. 2," being the $1,000 Olson certificate. This official was called as a witness and corroborated the testimony of the receiver. These witnesses were cross-examined as to their testimony.

Counsel for defendants now urge, in the face of this showing, that there is no evidence "entitled to credit" to support the court's finding that the collateral was pledged for the repayment only of the $1,000 certificate of deposit. This assertion could only be based upon the theory that the books of the bank were not properly before the court; but, having interposed no objection to their introduction and having cross-examined the witnesses on their testimony therefrom, counsel "cannot now be heard to say that there was no evidence in the case which tends to establish the very matter to which this testimony referred." (*Eablonski* v. *Close,* 70 Mont. 292, 225 Pac. 129.)

4. For the defense, defendant Anderson, the former cashier [5] of the Coffee Creek bank, testified to the transactions leading up to the issuance of the two certificates of deposit for $2,500 each, and fixed the total indebtedness of this bank to the defendant bank at an amount in excess of $7,400. As to the pledged notes, his testimony was that "we always understood" that they were held as security for any and all indebtedness of his bank to the defendant bank. He thus sought to discredit the books over which, as the managing agent of the Coffee Creek bank, he had supervision and control, and the probative force of his statement regarding the notes is materially weakened, if not destroyed, by his statement of his "understanding," rather than the assertion of a fact. (*First Nat. Bank* v. *Bullard,* 20 Mont. 118, 49 Pac. 658.),

Counsel for plaintiff asserts that, if Anderson's testimony is sufficient to establish a contract by which assets of the bank were pledged to secure certain depositors, such contract is void as against public policy, but, on the record and as the court made no finding on that question, we are not now called upon to determine it.

The testimony of certain officers of the defendant bank was received by deposition. While, in some measure, this testimony tended to corroborate that of Anderson, it but created a conflict in the testimony, and, as the testimony on the part of the plaintiff was sufficient to warrant the findings of the court on this question, those findings cannot now be disturbed.

5. As to the second question, or the right of the defendant [6] bank to the proceeds of the Murray note, the record discloses that, prior to August, 1923, the state bank examiner had found the capital of the Coffee Creek bank impaired and had required the stockholders to make good the impairment, and that certain stockholders had paid their proportionate share which had been placed in a "stockholders' reserve" fund. On August 14, 1923, the Murray note was "charged off" and carried as a "nonledger" asset. Three days later an entry was made in the books to the effect that the note was "paid." The books contain no record of a sale or transfer of the note or the receipt of any sum paid to the bank therefor, either prior to the time it was entered as paid or on that date, but on that date the amount of the supposed payment, or $1,195, was charged against the "stockholder's reserve" fund, belonging to the bank. In other words, the bank paid to itself the amount of a third person's indebtedness to it.

It is evident that the note came into the hands of the defendant bank by reason of its delivery by some officer of the Coffee Creek bank to some stockholder in return for the payment of such stockholder's assessment toward the correction of the impairment of the bank's capital. It is admitted that the defendant bank collected the full amount of $1,195

on the note, and no contention is made that it was an innocent purchaser for value from a third person, nor could such contention be made as the maturity date of the note had long since passed.

The propriety or legality of the assessment made is not questioned; it was evidently made under the provisions of section 6078, Revised Codes of 1921, and imposed a duty upon each stockholder to respond, to the extent of the demand, to the liability imposed upon him by section 6063, as amended by Chapter 9 of the Laws of 1923.

The delivery of the note of a stockholder must have been made on August 17, 1923, the date of the alleged payment; although it had been charged off for three days, it was still an asset of the bank and could not be disposed of except for a valuable consideration, and, as the stockholder was in duty bound, under the law, to pay his proportionate part of the impairment, the bank was under no obligation to give him anything in return for such payment.

The general rule is that the performance of a legal obligation is not a valid consideration, whether the obligation arises from the law independent of contract, or from a subsisting contract.   (13 R. C. L. 351, and cases cited; see, particularly, *Pacific Rys. Advertising Co.* v. *Carr*, 29 Cal. App. 722, 157 Pac. 529.)

It is therefore apparent that the note was wrongfully in the possession of the defendant bank, and the proceeds thereof belonged to the plaintiff as receiver of the owner of the note. The court's findings with regard to this question were proper and must be upheld.

6. As to the Liberty bonds transaction, the record discloses [7] that the Coffee Creek bank had in its possession Liberty bonds of the value of $1,500 belonging to the defendant bank; it tendered to the latter notes of the face value of $1,459.83 in full payment therefor, which tender was properly rejected, but, instead of returning the notes, the defendant bank

retained them and proceeded to collect certain thereof. Demand being made for the return of the notes, the defendant bank stated that it held them "pending settlement." The most that the defendant bank could claim would be the right to apply the proceeds of these notes to the amount due for the bonds, and this, by its findings and judgment, the court did, crediting the full amount collected and permitting the defendant to have satisfaction of the judgment rendered against it to the extent of the face value of the remaining notes, if it would deliver those notes to the clerk of the court. In this the court acted justly and equitably toward the defendant, and it has no just cause for complaint.

We find no reversible error in the record, and the judgment is, therefore, affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.

Rehearing denied March 15, 1928.