MITCHELL, RESPONDENT, v. GARFIELD COUNTY, ET AL., APPELLANTS.

No. 8825

Submitted January 12, 1949. Decided July 19, 1949.

208 Pac. (2d) 497

Mr. Robert E. Purcell, Jordan, Mr. F. F. Haynes, Forsyth, Mr. J. J. McIntosh, Forsyth, Mr. Hugh J. Lemire, Miles City, for appellants. Mr. McIntosh and Mr. Lemire argued orally.

Mr. W. B. Leavitt, Miles City, for respondent. Mr. Leavitt argued orally.

THE HON. F. S. P. FOSS, District Judge, sitting in place of Mr. Justice Bottomly, disqualified:

Action to quiet title to sections 33 and 35 in Township 14 North, Range 37 East, M. P. M. and section 31 in Township 14 North, Range 38 East, M. P. M.

The complaint alleges: That plaintiff W. A. Mitchell is the duly appointed, qualified and acting trustee of the Harvey-Montana Land Association; that since about January 27, 1923, when the lands were conveyed to the duly appointed, qualified and acting trustee of said association, he has been the owner of the lands in accordance with the trust and that defendants claim an interest in the lands adverse to the plaintiff, which claim is invalid, void and without right and of no effect. The prayer is:

That defendants be required to set forth their claims or interest; that same be declared and adjudged without right or foundation, invalid, void and of no effect; that title to the lands be quieted in plaintiff and that defendants be forever barred and enjoined from asserting any claim or interest therein adverse to the plaintiff.

Defendants appeared by general demurrer which was overruled, whereupon defendants answered.

Defendant S. O. Mysee's answer admits he claims an interest in sections 33 and 35 adverse to the plaintiff's claim of title and denies all other allegations of the complaint and as a further defense pleads that the plaintiff's action is barred by the provisions of Chapter 100, Laws of 1943, and prays that title be quieted in said defendant in sections 33 and 35, supra.

Defendant Garfield County's answer claims a six and a quarter royalty interest in oil, gas and minerals produced and saved from all the lands described in the complaint and alleges that the county acquired title to the described lands through tax deeds duly and regularly issued, delivered and recorded; that the county took possession of and possessed the lands until they were sold to the defendants S. O. Mysee and Ted Birkrem; that on October 3, 1945, Garfield County sold to Mysee sections 33 and 35; that on November 7, 1945, Garfield County sold to defendant Birkrem section 31; that defendants Mysee and Birkrem immediately went into possession of the land; that the deeds conveying title to defendants Mysee and Birkrem reserved to Garfield County a six and a quarter royalty in all oil, gas and minerals produced and saved from the lands, and further pleads that the plaintiff is barred from maintaining this action by reason of the provisions of Chapter 100, Laws of 1943.

Defendant Birkrem's answer denies plaintiff's claim of title to the described lands; claims title in Birkrem in and to section 31, Township 14 North, Range 38 East, and alleges: That plaintiff's action is barred by the provisions of Chapter 100, Laws of 1943; that tax deed issued to Garfield County for said section 31, and was recorded in the office of the county clerk and re-

corder of Garfield County on May 24, 1939, and that on the latter date, Garfield County took possession of the lands and owned and possessed same until they were sold to defendant Birkrem on November 7, 1945.

In his reply to the answer and cross complaint of defendant Garfield County, plaintiff admits the assesssent of taxes on the described land, their delinquency and sale to Garfield County and that an alleged tax deed was issued, and alleges that the tax deed executed to Garfield County was void and of no effect for the reason that the defendant county did not file an affidavit in the office of the county treasurer of said county which disclosed upon its face that the required notice of application for tax deed had been given; that the affidavit and proof of service filed, which was the basis for the issuance of the tax deed, does not state whether the lands at the time of the application for tax deed were occupied or unoccupied and if occupied the name of the occupant thereof, and that if occupied, the notice of application was never served upon the occupant; that by reason of the insufficiency of the affidavit of service the county treasurer was without jurisdiction to execute a valid tax deed. Plaintiff also admits the recording of the alleged tax deeds and that the defendant county attempted to sell said lands to the defendants Mysee and Birkrem, but denies the other affirmative defenses pleaded.

In his reply to the answer of defendant Birkrem, plaintiff specifically denied Birkrem's asserted interest in the lands and the affirmative defenses pleaded by such defendant.

It was stipulated that the defendants S. O. Mysee and Ted Birkrem were single men and on plaintiff's motion the action was dismissed as to the non-existing defendants Mrs. Ted Birkrem and Mrs. S. O. Mysee.

The default of all defendants not appearing was entered and the matter was tried before the court without a jury.

*Plaintiff's Proof.* Without objection plaintiff introduced in evidence a certified copy of the declaration of trust of the Harvey-Montana Land Association recorded in the county clerk and

recorder's office of Garfield county, and a certified copy of the supplemental declaration of trust of the Harvey-Montana Land Association and the parties stipulated that if one Alva S. Sraber were present and sworn as a witness on behalf of plaintiff, he would testify: "That he resides at Harvey, Illinois; that he was a shareholder and is now a shareholder of the Harvey-Montana Land Association, and has been since the inception thereof; that he is familiar with all records and transactions of the association, and that there never was a meeting of the shareholders, or the holders of the beneficial interest after the original organization meeting thereof, and that there was no amendments ever made to the original articles by the shareholders." It is further stipulated that William Soenksen, the original trustee of the Harvey-Montana Land Association, died on the 3rd day of February 1940.

Plaintiff introduced in evidence portions of the court files in district court cause number 1439, being the petitions of A. S. Craber for the appointment of trustee; an affidavit for order of service of the notice of hearing; an order for hearing by the court and a notice of hearing on petition for appointment of succeeding trustee, together with affidavit of posting, affidavit of mailing, affidavit of publication of notice and order of the court appointing Mitchell as succeeding trustee.

Plaintiff Mitchell testified without objection as to his appointment and qualification as trustee of the Harvey-Montana Land Association, and that as trustee he is the owner of the described lands; that the tax deed in question was issued prior to his appointment as trustee and claiming ownership in the lands as trustee; that he offered and was able to pay all delinquent taxes and charges that he had been required to pay; that the lands involved herein and other lands had been lying dormant for many years prior to his appointment; that taxes had accumulated thereon; that at the time of his appointment as trustee he did not have funds with which to operate or protect the lands; that taxes were paid on some of the other lands shortly after his appointment as trustee from accumulations from the sale of various

lands; that the instant action was instituted since he had become able to pay the taxes in the event the action was successful; that the lands involved, together with other lands were open range; that no one was using the lands exclusively; that prior to his appointment as trustee he had had no occasion or right to determine who was running stock on the lands, and that he knew at the time of his appointment as trustee in 1944 that there was a deed of record of the three sections involved herein.

Plaintiff, through the county clerk and recorder and the county treasurer, introduced various exhibits, including the three tax deeds issued by the county treasurer to Garfield County and certain records in the office of the county clerk and recorder relating to the application for tax deeds; also the affidavits of proof of service in the county treasurer's office upon which the three tax deeds were issued by the county treasurer, and also the entire record of the proof of service in the county treasurer's office which was the basis of the issuance of the three tax deeds.

Plaintiff also introduced further testimony to the effect: That the defendant McDougall as trustee never exercised any control over the lands; that he never qualified as trustee, and that there is no certificate of any meeting of the owners of the land association or of those beneficially interested therein on file in the office of the county clerk and recorder of Garfield County. Thereupon plaintiff rested.

*Defendants' Proof.* Defendants introduced in evidence: A grazing lease for a five-year period from April 1, 1941, between defendant Garfield County and defendant Mysee; a grazing lease for a five-year period from and after March 4, 1941, for section 31; and a grazing lease for a period of four years and three months from and after January 6, 1942, between defendant Garfield County and defendant Birkrem for section 33.

Defendants also introduced in evidence three deeds issued by Garfield County to the defendants Birkrem and Mysee covering the three sections involved in this proceeding, which deeds reserved to Garfield County six and a quarter percent. royalty in-

terest in the oil, gas and minerals produced and saved from the lands described therein.

Defendants Mysee and Birkrem testified: That prior to the issuance of the alleged tax deeds the lands were open grazing lands, and that they were used not only by the defendants, but by other persons as grazing land; that they were ''open, free for everybody'' with no one in possession or occupancy, and that after the issuance of the tax deeds the lands were not fenced. There is no evidence in the record before us to indicate that there had been any change in the use of the lands involved or in their possession, control or occupancy.

*Findings of Fact.* The trial court made findings of fact to the effect: That the lands involved in the action were conveyed to one William Soenksen as trustee of the Harvey-Montana Land Association Trust pursuant to a trust deed, dated March 4, 1924; that the declaration of trust, among other things, provided that title to the said land was vested in the said trustee as successor or successors, and further provided for the removal of the trustee, filling vacancies in the office thereof, and that increasing the number or appointing additional trustees shall be done only by the holders of outstanding shares;

That on April 9, 1924, William Soenksen attempted to make a supplemental amendatory declaration of trust for the purpose of increasing the number of trustees and purported to execute a deed to the additional trustees, A. H. McDougall and G. H. Stephenson, purporting to convey to each of such persons as trustees an undivided one-half interest in the land; that said amended declaration of trust or the increase in the number of said trustees was not done or authorized by the owners of the shares of stock in the said trust estate;

That William Soenksen and G. H. Stephenson are dead; that neither A. H. McDougall or G. H. Stephenson ever exercised any right or control over the lands as trustees; that a trust exists and that it is and was necessary that a trustee be appointed to administer said trust; that in a proper proceeding the office of trustee of the Harvey-Montana Land Association was declared

vacant and W. A. Mitchell, the plaintiff herein, was on October 19, 1944, appointed trustee of said trust; that he qualified as such, and ever since that time he has been and now is the duly appointed, qualified and acting trustee of the said Harvey-Montana Land Association and thereupon became, and now is vested with all right and title to said involved lands as is provided for in said declaration of trust; that the plaintiff has never conveyed the lands involved in this action, or any interest therein, and except as to the tax deeds in question, the plaintiff is the owner of the said lands;

That the taxes levied against each of the three sections of land involved became delinquent and were sold to Garfield County; that on March 10, 1939, Garfield County gave notice of application for a tax deed to section 31, Township 14 North, Range 38 East, M. P. M., and on May 24, 1939, the county treasurer purported to execute a tax deed to Garfield County to said section 31; that on March 13, 1939, Garfield County gave notice of application for a tax deed to section 35, Township 14 North, Range 37 East, M. P. M., and on May 24, 1939, the county treasurer purported to execute to Garfield County a tax deed to said section 35; that both of the foregoing purported deeds were recorded in the office of the county clerk and recorder on May 24, 1939; that on September 2, 1941, Garfield County gave notice of application for tax deed on section 33, Township 14 North, Range 37 East, M. P. M., and on the 21st day of November 1941, the county treasurer purported to execute to Garfield County tax deed to said section 33;

That the county clerk filed in the county treasurer's office an affidavit of proof of service of said notice of application for each section of said land upon which the county treasurer executed and issued the respective purported tax deeds; that except as to dates the affidavits filed in both the office of the county clerk and the office of the county treasurer are identical both as to form and contents;

That none of the affidavits filed in the office of the county clerk or in the office of the county treasurer state that the lands

are occupied, or unoccupied, or if occupied the name of the occupant or occupants thereof, or any thereof, and each of the said affidavits is entirely silent as to the occupancy;

That the only reference in any of the affidavits in relation to service of notice of application for tax deed other than statement of publication of said notice is as follows: "That the postoffice address of all persons having any interest in, owner, mortgagee, assignee of mortgagee, as disclosed by the records of the county clerk of Garfield County, Montana, is shown on the attached copy. That on the —— day of 19——, I deposited in the postoffice at Jordan, Montana, with postage prepaid thereon, a registered letter addressed to the said owner, mortgagee, or assignee at his postoffice address containing a true and correct copy of the within notice of application for tax deed."

That on March 4, 1941, Garfield County leased to defendant Ted Birkrem, all of section 31, Township 14 North, Range 38 East, M. P. M., for valuable consideration for a term of five years, which lease was filed on March 26, 1941, in the office of the county clerk and recorder of Garfield County;

That on January 6, 1942, Garfield County leased to defendant Birkrem all of section 33, Township 14 North, Range 37 East, for a valuable consideration for a term of five years, which lease was filed January 30, 1942, in the office of the county clerk and recorder of Garfield County; that on April 7, 1941, Garfield County leased to defendant S. O. Mysee all of section 35, Township 14 North, Range 37 East, M. P. M., for a valuable consideration, for a term of five years which lease was filed April 23, 1941, in the office of the county clerk and recorder;

That on October 3, 1945, sections 33 and 35 in Township 14 North, Range 37 East, were sold to defendant S. O. Mysee, and on November 7, 1945, the county sold section 31, Township 14 North, Range 38 East, M. P. M., to defendant Ted Birkrem;

That the foregoing lands are open range lands used only for grazing purposes; that the lessees and subsequent purchasers of said lands ran their livestock thereon in common with other livestock running on the open range and neither they nor their

124

predecessors in interest made any improvements thereon; that neither did they by any act give notice of their adverse claim and that in the event the tax deeds are set aside, plaintiff trustee is able, willing and has offered to pay all delinquent taxes, penalty and interest due on said lands.

The evidence introduced in the trial of the action amply supports the trial court's findings of fact.

*Conclusions of Law.* From the foregoing findings of fact the trial court made conclusions of law to the effect:

1. That the tax deeds issued to the defendant county for the lands and premises heretofore described, are null, void and of no effect;

2. That the plaintiff W. A. Mitchell is duly and regularly appointed as trustee of the Harvey-Montana Land Association;

3. That plaintiff Mitchell as trustee is the owner of the lands involved in this action, free and clear of all claims of the defendants, including those of the defendant Garfield County, except as to the delinquent taxes with penalties and interest now due;

4. That the defendant county of Garfield, or its successors in interest, never adversely possessed said property so as to afford the true owner thereof the means or knowledge of the assertion of an adverse claim thereto; and

5. That upon payment of the delinquent taxes, penalties and interest, title to the said land and all thereof shall be quieted in the plaintiff, free and clear of all claims of every kind, nature and description of the said defendants and each of them, and that any claim that any of the defendants have, except the right of Garfield County to the payment of said delinquent taxes, penalty and interest, are without any right or foundation and are invalid, void and of no effect, and that the defendants and each of them should be restrained and enjoined from ever asserting any claim in or to the lands or any part or parcel thereof.

Decree was entered in accordance with the foregoing findings and conclusions. This is an appeal from the decree so entered.

Defendants challenge the correctness of the trial court's find-

ings and adjudication to the effect: That a trust existed; that it was necessary to appoint a trustee to administer such trust; that plaintiff Mitchell was duly and regularly appointed trustee of the Harvey-Montana Land Association; that he is vested with the right and title to said lands as provided in the declaration of trust and as such trustee is the owner of the lands free and clear of all claims of defendants.

The allegation in the first paragraph of the complaint that plaintiff is the duly appointed, qualified and acting trustee of the Harvey-Montana Land Association is admitted by defendant Garfield County in its answer while the answer of defendants Mysee and Birkrem deny the allegation on information and belief. Nowhere in their pleadings do defendants place in issue the jurisdiction or authority of the district court to make the order appointing the trustee. See price v. Skylstead, 69 Mont. 453, 222 Pac. 1059.

The court making the order of appointment is a court of record having general legal and equitable jurisdiction within the state. The order is a final order made upon proper application therefor and it specifically recites that the court had theretofore made an order directing that notice of the application for appointment be given to each of the known members of the association at their last known address and that in addition thereto, a copy of the notice be published in the Jordan Tribune, a newspaper of general circulation, published in Garfield County, Montana; that the order directing the giving of notice and the notice set September 30, 1944, as the time for hearing the petition for appointment of trustee; that the notice had been served by mailing, posting and publishing as ordered by the court; that no objections had been filed; that the court heard evidence in support of the petition from testimony and records; that the trust owned land situated in Garfield County, Montana; that the ownership of the said land was held in trust by a trustee; that the trustee was deceased; that the trust had not been administered; that it was necessary that the court appoint a trustee to administer and close the trust, and then followed the order

appointing the trustee, providing for the furnishing of bond and taking the oath of the trusteeship, and requiring that the trustee report his administration of the trust estate from time to time to the court. The exhibits certified to this court in so far as the order appointing trustee are concerned are the petition and the order.

In Eichhoff v. Eichhoff, 101 Cal. 600, 36 Pac. 11, 12, it is said: ''More than 200 years ago it was said in Peacock v. Bell, 1 Wms. Saund. 74, that 'the rule for jurisdiction is that nothing shall be intended to be out of the jurisdiction of a superior court but that which specially appears to be so, and, on the contrary, nothing shall be intended to be within the jurisdiction of an inferior court but that which is so expressly alleged;' and this rule has been so frequently repeated as to have become a maxim in the law. This presumption extends to everything necessary for the support of the judgment, as well those facts which are necessary to give the court jurisdiction of the defendant as those which are necessary to sustain its decision of fact or conclusions of law thereon. Every court is called upon to determine, in the first instance, whether it has jurisdiction to hear the cause before it; and its decision upon this point is entitled to the same presumption of verity as its decision upon any other point. It is also its duty, before it hears the complaint of the plaintiff, to determine whether the defendant has been properly brought before it;* * *. The fact that the court has rendered a judgment implies a determination by it, before it assumed to hear the controversy, that it had jurisdiction over the subject-matter of the action, and of the defendant against whom the complaint was directed. * * * The presumption of its jurisdiction exists because it has been authorized to determine this question in the same mode as any other question of fact upon which its judgment is to rest, and its decision thereon is presumed to have been made upon evidence sufficient to sustain it. Its determination upon this question is to be made upon evidence of some nature, and, whether this evidence is sufficient or insufficient to support its conclusions thereon, it has the jurisdiction to make

the determination; and if its conclusion is incorrect it is merely error, which can be reviewed only upon a direct appeal. * * * If it makes a record of the facts giving it jurisdiction, or of its exercise of such jurisdiction, there is no occasion to invoke any presumption. It is only when the record is silent that the necessity for presumption arises. * * * Any condition of facts consistent with the validity of the judgment will be presumed to have existed, rather than one which will defeat the judgment, it must be presumed, in support of the action of the court, that such service was shown to it, although it has not preserved any record thereof." The foregoing case was cited with approval in State ex rel. Delmoe v. District Court, 100 Mont. 131, 46 Pac. (2d) 39 and in Haupt v. Simington, 27 Mont. 480, 71 Pac. 672, 94 Am. St. Rep. 839.

In Jenkins v. Carroll, 42 Mont. 302, 112 Pac. 1064, 1068, the court cited Burke v. Inter-State Savings & Loan Ass'n, 25 Mont. 315, 64 Pac. 879, 87 Am. St. Rep. 416, and Haupt v. Simington, supra, and quoted with approval from 23 Cyc. 1065, as follows: "The term 'collateral' as used in this connection is opposed to 'direct.' If an action or proceeding is brought for the very purpose of impeaching or overturning the judgment, it is a direct attack upon it. Such is a motion or other proceeding to vacate, annul, cancel, or set aside the judgment, or any proceeding to review it in an appellate court * * *. On the other hand, if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the judgment is collateral."

In Burke v. Inter-State Savings & Loan Ass'n, supra [25 Mont. 315, 64 Pac. 881], this court said: "By 'collateral attack,' * * * is meant every proceeding in which the integrity of a judgment is challenged, except those made in the action wherein the judgment is rendered or by appeal, and except suits brought to obtain decrees declaring judgments to be void ab initio." In the Burke case, supra, this court said: "When, however, the judgment of a court of general jurisdiction, acting within the ordi-

nary scope of that jurisdiction, is assailed collaterally, the presumption of jurisdiction over the person of the defendant is conclusive, unless upon the face of the judgment roll a lack of jurisdiction affirmatively appears. A judgment, when collaterally attacked, must be tried by inspection of the judgment roll, and by that alone. These rules rest upon well-established principles.'' (Above quotations from the Burke case cited with approval in Haupt v. Simington, supra; State ex rel. Delmoe v. District Court, supra; Frisbee v. Coburn, 101 Mont. 58, 52 Pac. (2d) 882. And see: Coburn v. Coburn, 89 Mont. 386, 298 Pac. 349; Hanrahan v. Andersen, 108 Mont. 218, 90 Pac. (2d) 494; Missoula Light & Water Co. v. Hughes, 106 Mont. 355, 77 Pac. (2d) 1041; State ex rel. Haynes v. District Court, 106 Mont. 578, 81 Pac. (2d) 422.

Thompson v. Chicago B. & Q. R. Co., 78 Mont. 170, 253 Pac. 313, 316, was an action to quiet title to real property. To prevail in that action it was necessary for the plaintiff to set aside a judgment or final order theretofore entered in condemnation proceedings. The court said: ''It should not require any authorities to establish that such an attempt, in an action to quiet title, constitutes a collateral attack upon that order or judgment, * * * the judgment or final order * * * shows * * * that the court had jurisdiction both of the plaintiff and the subject-matter of that action. Therefore the judgment or order entered therein cannot be impeached by a collateral attack. * * *

'' 'Judgments of a legally organized judicial tribunal, proceeding within the scope of its allotted powers and possessing the requisite jurisdiction over the subject-matter of the suit whether correct or erroneous, cannot be called into question * * * in any collateral action or proceeding.' (Citing case.) * * * 'If the relief awarded or recovery authorized by a judgment is excessive, * * * it is erroneous and voidable, but may not be impeached in a collateral proceeding.' [34 C. J., Sec. 864, p. 465].''

In State ex rel. Delmoe v. District Court, supra, the judgment roll showed service of alias summons upon some of the defendants but contained nothing to indicate service or appearance on the

part of other defendants. There the court said [100 Mont. 131, 46 Pac. (2d) 42]: "Generally, a judgment is not open to collateral attack merely because the record fails to show the service of process by which the court acquired jurisdiction of the defendant; if the record is silent on this point, it will be presumed that lawful and sufficient process was duly served. (Citing cases.) This rule is likewise applicable where, as here, the record is silent as to service only on some of the parties defendant. * * * Absence from the record of papers which ought to have been included within the judgment roll is not enough to make it appear affirmatively that the court had no jurisdiction." (Citing cases.)

In Sanborn v. Lewis and Clark County, 113 Mont. 1, 9, 120 Pac. (2d) 567, 571, the court considered a judgment affecting the title to real property, and said: "To obtain relief against such a judgment, a direct proceeding * * * for the purpose must be resorted to. It is not subject to collateral attack. An attempt to set aside a judgment or title instruments executed pursuant to the order of such a judgment in a proceeding to quiet title is a collateral attack upon the judgment and is governed by the rule against collateral attack." Citing Thompson v. Chicago B. & Q. R. Co., supra.

The contention that the district court was without jurisdiction ▮ to appoint plaintiff Mitchell trustee was a collateral attack upon a final order for judgment.

The attack on the appointment of Mitchell as trustee raises ▮▮ the question of the legal capacity of the plaintiff to sue. Assuming that the plaintiff did not have the legal capacity to sue as contended by defendants, the want of legal capacity to sue not appearing in the complaint, it was incumbent upon the defendants to point out specifically the particular defects relied upon. As heretofore pointed out there was only a denial of Mitchell's appointment on information and belief. Not having challenged the plaintiff's capacity to sue either by special demurrer or answer, the defendants must be deemed to have waived any defect. Sections 9131, 9132, 9136, R. C. M. 1935; O'Donnell

v. City of Butte, 44 Mont. 97, 119 Pac. 281; Milwaukee Gold Extraction Co. v. Gordon, 37 Mont. 239, 95 Pac. 995; Binzel v. Viehmann, 111 Mont. 6, 106 Pac. (2d) 187; Ayotte v. Nadeau, 32 Mont. 498, 81 Pac. 145; Wilson v. Yegen Brothers, 38 Mont. 504, 100 Pac. 613; Harbolt v. Hensen, 78 Mont. 228, 253 Pac. 257; La Bonte v. Mutual Fire & Lightning Ins. Co., 75 Mont. 1, 241 Pac. 631.

The record shows that during the progress of the trial the court made inquiry of counsel for defendants with the following result, viz.:

"The Court: You haven't any objection then to the allegations of paragraph One of the complaint? Mr. Lemire: No, I don't your honor. Mr. McIntosh: No."

Again and at a subsequent stage of the trial the court made further inquiry of counsel as follows:

"The Court: Do you want to raise any question in this case that Mr. Mitchell isn't the trustee of the Harvey-Montana Land Association? Mr. Lemire: Well I don't as yet; there might be a question."

The record wholly fails to show that at any time thereafter during the trial any question whatever was raised concerning the plaintiff Mitchell's appointment as trustee, such question being raised for the first time on this appeal.

The order appointing plaintiff Mitchell as trustee was introduced in evidence at the trial without objection of any kind. Plaintiff Mitchell testified without objection that he was the qualified and acting trustee of the Harvey-Montana Land Association and as such trustee claimed ownership of the lands involved in this proceeding. Plaintiff was cross examined by Mr. Lemire, counsel for defendant Birkrem, and by Mr. McIntosh, counsel for defendant Mysee but they failed to question plaintiff's aforesaid testimony or to introduce any evidence to the contrary so that such testimony stands uncontroverted and undisputed in the record.

In 3 Am. Jur., "Appeal and Error," sec. 343, p. 87, it is said: "The general rule is that the appellate court will not consider an

objection that evidence has been improperly admitted unless the question was raised and reserved in the trial court." Again in 53 Am. Jur., "Trial," sec. 135, p. 119, it is said: "Unless timely and sufficient objection is made to the introduction of inadmissible evidence * * * the reviewing court ordinarily will not consider the question of the propriety of the omission of evidence. Moreover, when inadmissible evidence is permitted to be introduced without objection, the court and jury may give it such probative effect and value as it is entitled to notwithstanding it would or should have been excluded if properly objected to."

In Labbitt v. Bunston, 84 Mont. 597, 277 Pac. 620, 621, this court said: "The law is that one must object to improper testimony when it is offered or abide the result; failure to object at the proper time waives the error (Yoder v. Reynolds, 28 Mont. 183, 72 Pac. 417, and cases cited), and, when a party sits by at a trial and allows evidence to be introduced without objection, he will not be permitted to assert that the court was in error * * *. Genzberger v. Adams, 62 Mont. 430, 205 Pac. 658."

In Forquer v. North, 42 Mont. 272, 112 Pac. 439, 444, this court said: "The question was objected to, but not for the reason urged against it in this court. Under these circumstances, we cannot consider the specification of error." (Citing cases.)

In Butte Northern Copper Co. v. Radmilovich, 39 Mont. 157, 101 Pac. 1078, when a certified copy of articles of incorporation was offered in evidence there was an objection that the complaint failed to state facts sufficient to constitute a cause of action and on appeal this court refused to consider appellant's specification of error other or further than as to the specific ground urged in the objection as made in the trial court.

In Poindexter & Orr Live Stock Co. v. Oregon Short Line R. Co., 33 Mont. 338, 83 Pac. 886, 887, the court said: "Counsel sat by and permitted the evidence to be heard without objection. * * * Had objection been made to its introduction, the court would doubtless have excluded it. As it was, the effort to have it excluded came too late. 'The practice, whether in civil or criminal cases, of deliberately permitting evidence to be given with-

out objection in the first instance, and then moving to strike it out on grounds which might readily have been availed of to exclude it when offered, is not to be tolerated.' People v. Long, 43 Cal. 444.''

In Eablonski v. Close, 70 Mont. 292, 225 Pac. 129, 131, we said: ''It is true that some of this testimony might and should have been excluded upon proper and timely objection, but no such objection was made. Counsel sat by and permitted the same to be given without any objection and then cross-examined the witness upon it; he cannot now be heard to say that there was no evidence in the case which tends to establish the very matter to which this testimony referred.''

Again, in Baker v. Citizens' State Bank, 81 Mont. 543, 264 Pac. 675, 677: ''Counsel for defendants now urge, in the face of the showing, that there is no evidence 'entitled to credit' to support the court's finding that the collateral was pledged * * *. This assertion could only be based upon the theory that the books of the bank were not properly before the court; but, having interposed no objection to their introduction * * * counsel 'cannot now be heard to say that there was no evidence in the case which tends to establish the very matter to which this testimony referred'.'' See also: Mette & Kanne Distilling Co. v. Lowrey, 39 Mont. 124, 101 Pac. 966.

In Garrison v. Trowbridge, 119 Mont. 505, 177 Pac. (2d) 464, 465, where evidence as to habit or custom was introduced in evidence without objection, the court said: ''Plaintiff contends that evidence of the habit or custom * * * was inadmissible * * * that issue was presented by the pleadings and all the evidence on the point went in without objection and hence no error can be predicated on that account.''

In Rosser-Moon Furniture Co. v. Harris, 191 Okl. 607, 131 Pac. (2d) 1004, 1006, the court said: ''It is well settled, on both reason and authority, that evidence, inadmissible because not within the issues presented by the pleadings, which is admitted without objection, is to be considered and given weight for all purposes the same as if it were legally admissible.''

No objection was made to the introduction of either the documentary or oral evidence concerning the legal capacity of the plaintiff Mitchell to sue. The objection urged on the appeal to this court was not made in the trial court and that court had no opportunity to pass upon the matters which are here urged as error, and since this court sits only as a court of review, the contention here made for the first time cannot be considered.

As was said by this court speaking through Mr. Chief Justice Brantly in Myers v. Bender, 46 Mont. 497, 129 Pac. 330, 333, Ann. Cas. 1916E, 245: ''A sufficient answer to this contention is that the evidence went in without objection.''

Defendants having failed to object at the trial cannot now assert that the trial court was in error for admitting the evidence and giving the same full consideration in its findings. Merchants' Nat. Bank v. Greenhood, 16 Mont. 395, 41 Pac. 250 (rehearing, 851); Brand v. Servoss, 11 Mont. 86, 27 Pac. 407; State v. Crean, 43 Mont. 47, 114 Pac. 603, Ann. Cas. 1912C, 424.

Defendants contend the trial court erred in holding jurisdictional and void each of the affidavits filed with the county treasurer on which affidavits the several tax deeds were issued. Each of the affidavits failed to set forth the requisite statements as to notice or occupancy and in that respect each affidavit is practically the same as the affidavits considered by this court in the recent cases of Lowery v. Garfield County, 122 Mont. 571, 208 Pac. (2d) 478, 1 St. Rep. 260 and Ross v. First Trust & Savings Bank, 123 Mont. 81, 208 Pac. (2d) 490, 2 St. Rep. 36, and on the holding of this court in those cases and upon the authorities cited, the district court correctly held the affidavits in the instant case to be jurisdictional and the tax deeds issued without the requisite showing as to notice and occupancy, void.

In the Lowery case, supra, and the Ross case, supra, this court held unconstitutional the provisions of Chapter 100, Laws of 1943, upon which the defendants rely and which they contend bars plaintiff from challenging in this action the validity of the several tax deeds, and again upon our holdings in the Lowery case and the Ross case, and upon the authorities therein cited,

the trial court's conclusions and holdings in the case at bar must be and they are sustained.

The judgment quieting title in the plaintiff W. A. Mitchell, trustee of the Harvey-Montana Land Association upon payment of the delinquent taxes, interest and penalties, is affirmed.

Mr. Chief Justice Adair and Mr. Justice Freebourn, concur.

MR. JUSTICE ANGSTMAN (concurring in part and dissenting in part) :

I concur in the result reached in the foregoing opinion with respect to the appointment of plaintiff as trustee.

I think the tax deed was valid. Plaintiff's predecessors in interest were served with notice of application for the tax deed and hence plaintiff is not in a situation to rely upon the case of Small v. Hull, 96 Mont. 525, 32 Pac. (2d) 4. As in the Lowery case, decided June 24, 1949, and the Ross case decided July 13, 1949, the lands in question were unoccupied. The complaint in this action invited in all unknown persons claiming an interest in the property and no one coming under the head of an occupant of the property is asserting any interest by reason of not having been served with notice of application for the tax deed. What I said in my dissenting opinion in the Lowery and Ross cases has equal application to this case on that point as well as on the validity of Chapter 100, Laws of 1943.

There is an additional reason why I think the judgment appealed from here should be reversed. Here as to some of the land the tax deeds were issued in 1939 and as to the others in 1941. As against plaintiff who stands in the shoes of those who had proper notice of application for the tax deed, section 2214, R. C. M. 1935, barred his action within one year after the issuance of the tax deed. Hence section 2214 barred plaintiff's action here before Chapter 100, Laws of 1943, was passed. As before stated, Small v. Hull and kindred cases cannot be counted on by one situated as plaintiff here who stands in the shoes of one who had proper notice of application for the tax deed.

Defendant Mysee, it should be noted, pleaded the bar of section 2214, R. C. M. 1935, and I think that plea was good.

The trial judge, it should be noted, held that Chapter 100, Laws of 1943, was not a bar to plaintiff's action because the grantee did not take possession of the land and thus exhibit to the original owner his hostile claim. Since the majority opinion does not treat of that question there is no occasion to consider it here.

Under section 2214 possession is unnecessary as against one who had proper notice of application for the tax deed. Compare Small v. Hull, supra.

I think the judgment appealed from should be reversed.

MR. JUSTICE METCALF:

I concur in the foregoing opinion of Mr. Justice Angstman.